**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Robert PARISH, Defendant–Appellee.**

No. 01–30017.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 8, 2002.

Filed Oct. 18, 2002.

---

1026

Marsha Good Sept, Assistant United States Attorney, Billings, MT, for the plaintiff-appellant.

John P. Rhodes, Assistant Federal Defender, Missoula, MT, for the defendant-appellee.

Before CANBY, KLEINFELD, and GRABER,* Circuit Judges.

## OPINION

CANBY, Circuit Judge.

The United States appeals the district court's decision to grant defendant Robert Parish an eight-level downward departure from the sentence prescribed by the Sentencing Guidelines after Parish pleaded guilty to two counts of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). In imposing the sentence, the district court gave two reasons for its downward departure. First, the district court found that Parish's conduct was "outside of the heartland" of the offense. Second, the district court concluded that Parish was highly susceptible to abuse in prison. Because we find no abuse of discretion in the district court's rulings, we affirm the sentence.

## FACTUAL AND PROCEDURAL HISTORY

Parish worked for a company based in Bozeman, Montana. In May of 1999, Parish's employer terminated his employment because it discovered that he was spending considerable time on the Internet and had abused his travel expenses. Parish returned a laptop computer that his employer had provided to him for use in his job.

While cleaning out the laptop's hard drive, another employee discovered files on the hard drive that appeared to contain child pornography. After consulting with legal counsel, the company turned the computer over to the Bozeman Police Department, which in turn sent the computer to the FBI.

The FBI analyzed Parish's laptop computer and found that, from November 1998 through May 1999, Parish had routinely visited numerous pornographic sites, some of which included child pornography. When Parish visited these sites, files were automatically downloaded into the Temporary Internet Cache folder on the hard drive. Pictures go into the Temporary Internet Cache folder when they appear on the screen, whether the user wants them or not, unlike intentionally downloaded pictures. Approximately 9,000 images were found on Parish's hard drive, including 1,300 images that appeared to be child pornography. Although the vast majority of these images depicted adolescent girls, some images depicted graphic, violent sexual exploitation of very young children.

Parish was arrested for possessing and receiving child pornography. After his arrest, FBI agents seized the computer that Parish was using at his new job. Again, analysis of that computer yielded evidence that Parish had visited numerous pornographic websites, including some sites with pornographic images of children. In addition, a search of Parish's e-mail account revealed an exchange of messages with a 15 year-old female high school student in North Carolina.

---

* Judge Henry A. Politz was originally a member of this panel and heard argument in this case. He died prior to circulation of this opinion, and pursuant to General Order 3.2(g), Judge Susan P. Graber was drawn as a replacement. Judge Graber has read the briefs, reviewed the record, and listened to the tape of oral argument held on February 8, 2002.

There was no evidence on either computer that Parish had actively downloaded and stored any of the images. Nor was there any organization of the child pornography images or retrieval system for such images on either computer.

Parish was indicted on two counts of Possession of Child Pornography, 18 U.S.C. § 2252A(a)(5)(B), and two counts of Receiving Child Pornography, 18 U.S.C. § 2252A(a)(2). He reached an agreement with the government in which he pleaded guilty to two counts of Possession of Child Pornography. In preparation for sentencing, the probation department calculated that Parish's offense level was 20 and that his criminal history category was I. The probation department did not recommend a departure from the prescribed guideline range of thirty-three to forty-one months.

The district court held a lengthy sentencing hearing. Parish's father-in-law, mother-in-law, neighbor, and wife testified on his behalf. Dr. Michael Joseph Scolatti, a clinical psychologist and the co-director of the sex-offender treatment unit at the Missoula Regional Prison, also testified on Parish's behalf. Dr. Scolatti had examined Parish, and he testified at length about the minimal likelihood of recidivism in Parish's case and about the relative seriousness of Parish's conduct, as compared to the conduct of other offenders. Dr. Scolatti concluded that Parish's conduct was less culpable than the conduct of the "eight [or] nine" other child pornography offenders in the federal system with whom Dr. Scolatti was familiar. After comparing Parish's conduct to the conduct of both sex offenders in general and child-pornography possessors in particular, Dr. Scolatti opined that Parish's conduct was "outside the heartland" of the offense.

The government also presented testimony from several witnesses. The government focused on three images found on Parish's computers that were particularly graphic or violent, two of which depicted children who appeared to be about six years old. The government also stressed that Parish had taken steps to act on his fantasies by exchanging e-mails with the North Carolina girl. Finally, the government presented testimony that Parish had icons on his desktop that served as "short cuts" to pornography sites.

After the government presented its case, the district court recalled Dr. Scolatti. Dr. Scolatti testified that nothing he had heard from the government's witnesses changed his view. He again opined that Parish's conduct was outside the "heartland" of the offense.

Ultimately, the district court departed downward eight levels in sentencing Parish. The court relied on Dr. Scolatti's testimony and determined that Parish's conduct was outside the heartland of U.S.S.G. § 2G2.4, which applies to possession of child pornography.[1] In addition, the district court determined that "[Parish's] stature, his demeanor, his naivete, the nature of the offense, ... the combination of all of those things" created "a high susceptibility of abuse in prison." The court sentenced Parish to sixteen months on each count, with the sentences to run concurrently. The court determined that eight months of that sentence would be

---

1. The concept of a "heartland" comes from the introduction to the Sentencing Guidelines:

   The [United States Sentencing] Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

   U.S.S.G. ch. 1, pt. A(4)(b).

spent in prison, and the other eight months would be "served by home detention with electronic monitoring." Citing the application note to U.S.S.G. § 5C1.1, the district court stated that it was fashioning a sentence incorporating house arrest in order to meet a specific treatment purpose.[2]

The government appealed the sentence.[3] There is no challenge to the conviction.

## DISCUSSION

▄ We review for abuse of discretion a district court's decision to depart from the Sentencing Guidelines. *United States v. Sablan*, 114 F.3d 913, 916 (9th Cir.1997) (en banc). We accord substantial deference to the district court's decision to depart, because "it embodies the traditional exercise of discretion by a sentencing court." *Koon v. United States*, 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). We review de novo the district court's interpretation of the Guidelines and review for clear error the factual findings underlying the sentencing decision. *United States v. Jeter*, 236 F.3d 1032, 1034 (9th Cir.2001).

A district court may depart from the applicable Guideline range if it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." U.S.S.G. § 5K2.0 (policy statement) (quoting 18 U.S.C. § 3553(b)). In *Koon,* the Supreme Court explained how a district court should decide whether to depart from the range prescribed in the particular Guideline. 518 U.S. at 93–94, 116 S.Ct. 2035. First, the district court should identify what features of the case make it unusual. *Id.* at 95, 116 S.Ct. 2035. Next, the court must determine whether the ground on which it is contemplating a departure is forbidden, encouraged, or discouraged by the Guidelines. *Id.* The court may not depart on a forbidden ground. *Id.* at 95–96, 116 S.Ct. 2035. The court may depart on an encouraged ground as long as that encouraged ground is not already taken into account by the particular offense guideline. *Id.* at 96, 116 S.Ct. 2035. If a factor is discouraged, or encouraged but already taken into account, the district court may depart only if the factor is "present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Id.* If the Guidelines do not mention the factor t all, a district court must consider whether this particular factor warrants departure. *Id.*

The district court here concluded that a downward departure was warranted on two grounds, one arising from characteristics of the offense and the other arising from the characteristics of the offender. *See* U.S.S.G. § 5K2.0 (policy statement) (describing departure factors as "offense" or "offender" characteristics). As for the former, the court concluded that Parish's conduct was outside the "heartland"—the

---

**2.** The government does not argue that the split sentence fashioned by the district court was inappropriate.

**3.** We are not persuaded by Parish's argument that the government waived its objection to the departure or that it is barred from challenging the sentence by principles of judicial estoppel. Parish insists that the government admitted at sentencing that the facts support this departure. Considering the government's comment in context, we disagree. The government simply acknowledged the court's discretion to grant a departure based on Dr. Scolatti's testimony, but then went on to argue vigorously against its doing so. This acknowledgment was not a waiver. Rather, it was honest advocacy.

set of typical cases—that the applicable Guideline, U.S.S.G. § 2G2.4, was intended to punish. As for the latter, the district court concluded that Parish's likely susceptibility to abuse in prison warranted a departure. We will discuss each issue in turn.

*The "Heartland" of the Offense of Possessing Child Pornography*

In *United States v. Stevens,* 197 F.3d 1263 (9th Cir.1999), we discussed the "heartland" of the offense of possessing child pornography. In *Stevens,* the district court made two errors of law. First, it measured the defendant's conduct against the reasons Congress enacted the statute prohibiting child pornography, instead of measuring the defendant's conduct against that of other offenders. *Id.* at 1268–69. Second, the court relied on the fact that the defendant had not committed other crimes (such as child molestation) in addition to possession of child pornography. *Id.* at 1269. We held that the court must base its determination on the nature of the defendant's conduct in comparison with the conduct of other offenders of the same statute, and that the "heartland" to be determined is the heartland of the offense of possessing child pornography. *Id.* at 1268–69.

■ Here, the district court performed precisely the inquiry that we set out in *Stevens.* The district court asked Dr. Scolatti to compare Parish's conduct with the conduct of a "typical" offender under this same statute. Dr. Scolatti concluded that Parish's conduct was significantly less serious than that of offenders in other cases involving possession of child pornography. Among other things, Dr. Scolatti noted

that Parish had not affirmatively downloaded the pornographic files, indexed the files, arranged them in a filing system, or created a search mechanism on his computer for ease of reference or retrieval. Rather, he testified, the images in Parish's possession had been downloaded automatically into his Temporary Internet Cache file.

Dr. Scolatti also described the content of the images in Parish's possession as "pretty minor" compared to the content of images possessed by other offenders. Dr. Scolatti described Parish's conduct as "on the minimal end" of the scale, when compared to the conduct of a typical child-pornography offender.[4] Dr. Scolatti testified that most of the individuals convicted under the federal child pornography possession statute with whom he was familiar had been "a lot more extreme in terms of what they've done with child pornography and the Internet." After the district court correctly explained to Dr. Scolatti the concept of the "heartland" of an offense, the doctor opined that Parish's conduct was "outside of the heartland, definitely." At the close of the sentencing hearing, after hearing the government's evidence, Dr. Scolatti reaffirmed that opinion.

On the basis of Dr. Scolatti's testimony and on the court's own sentencing experience, the district court determined that Parish's conduct was outside the heartland of the offense targeted by the Guideline. The district court did not abuse its discretion in making that determination. The court appropriately compared Parish's possessory conduct with the possessory conduct of the typical child-pornography offender, and the record supports the court's

---

4. Portions of Dr. Scolatti's testimony described what we deemed irrelevant in *Stevens.* For example, Dr. Scolatti discussed whether Parish was likely to act on his fantasies, which takes the comparison beyond mere

possession offenders. However, after the district court asked specifically about possessors of child pornography, the witness repeated his earlier opinion: Within that limited class of offenders, Parish's conduct was minimal.

conclusion that Parish's conduct was comparatively minor.

Even if reasonable minds could differ, we cannot say that the district court abused its discretion in determining that Parish's offense conduct was outside the heartland. To the extent that the evidence conflicted, it was up to the district court to resolve those conflicts. *United States v. Working,* 224 F.3d 1093, 1102 (9th Cir. 2000) (en banc).

*Susceptibility to Abuse in Prison*

█ A defendant's unusual susceptibility to abuse by other inmates while in prison may warrant a downward departure. *Koon,* 518 U.S. at 111–12, 116 S.Ct. 2035; *United States v. Lara,* 905 F.2d 599, 603 (2d Cir.1990). The district court found that Parish was susceptible to abuse in prison because of a "combination" of factors: "his stature, his demeanor, his naivete, [and] the nature of the offense."

█ The reason for the district court's consideration of Parish's stature as a factor in his susceptibility is unclear. According to the presentence report, Parish is 5′11″ and weighs 190 pounds. The reference to Parish's stature may have been related to the way he carried himself. Perhaps the judge thought Parish looked smaller than the probation officer thought he looked, or looked physically weak. The district court may also have been relying on the opinion of Dr. Scolatti, a psychologist who worked with sex offenders in the prison system. Dr. Scolatti testified that, due to "... especially his stature.... I think he's a prime candidate to experience a lot of grief." To the extent that stature can be considered something more than merely physical height and weight, it is something that is better evaluated by a district judge than by an appellate panel that has never seen the defendant. There is no clear error in this determination.

Demeanor is clearly a factor in Parish's susceptibility to abuse that is more appropriately assessed by the district court than by the appeals court. Here, the district court had the opportunity to watch Parish for several hours during the sentencing hearing. There was also considerable testimony about his demeanor, including Dr. Scolatti's description of him as "positive and caring" and the doctor's explanation that these are not good characteristics to have in prison. Again, we find no clear error.

As for the issue of Parish's naivete, the district court did not explain what it meant by this term. The testimony provides clues, however. Not only does Parish not have a criminal record—a factor that is already incorporated into the sentencing calculations as criminal history—he also has no apparent history of criminal activity, other than the instant offense, or criminal associations that have not led to convictions.

Naivete could also refer to his actions in the crime itself. The fact that there is no evidence that Parish ever intentionally downloaded any pornography and did in any way organize the materials on his computer suggests that he may not have understood that he was coming into possession of these images, rather than merely viewing them. The trial judge may have been referring to an appearance and demeanor supporting naivete, subtleties that a cold record cannot display. That this naivete or lack of sophistication was such a general characteristic that it might make Parish less able to protect himself from ill-meaning inmates is a consideration within the discretion of the district court. Again, Parish's naivete is a factual determination better made by a district court judge than by an appellate court. We decline to overturn the district court's determination that Parish's stature, demean-

or and naivete are factors suggesting heightened susceptibility to abuse in prison.

██ The last factor cited by the district court as increasing Parish's susceptibility to abuse was the nature of the offense itself, namely the possession of child pornography. We need not reach the question whether the nature of the offense by itself can justify a downward departure by heightening an individual's susceptibility to abuse in prison. Instead, we address the question whether it is permissible for the district court to consider the nature of the offense in combination with other factors increasing the susceptibility to abuse. We conclude that it is. Such an approach allows the district court to take into account all the circumstances of the crime and the defendant and to make an appropriate individualized determination. *See Koon*, 518 U.S. at 112, 116 S.Ct. 2035 (considering the combination of the defendants' status as police officers, the notoriety of their crime, and the outrage about their crime for the purpose of determining whether they were susceptible to abuse in prison); *United States v. Wilke*, 156 F.3d 749, 753 (7th Cir.1998) (holding that an individualized determination is required by *Koon* ).[5]

██ Here, in response to the district court's questions, Dr. Scolatti testified that individuals convicted of sex offenses involving minors, including possessors of child pornography, came to prison with a "bad label" and were in for "a difficult time."

The likelihood of abuse by other prisoners as a result of the crime for which he was convicted, when considered with Parish's individual characteristics, is sufficient to permit a departure for susceptibility to abuse. *See, e.g., Koon*, 518 U.S. at 112, 116 S.Ct. 2035 (recognizing that "emotional outrage" about the offense could support a downward departure for susceptibility to abuse in prison) Dr. Scolatti's opinion did not rest on the classification of the offense alone. He explained that it was the combination of the crime and Parish's individual characteristics—his inexperience and his "positive and caring" nature—that made him susceptible to abuse.

In finding Parish to be susceptible to abuse, the district court relied on four different factors. This is not "mere membership in a class of offenders." *Cf. United States v. Kapitzke*, 130 F.3d 820, 822 (8th Cir.1997). It is, instead, an individualized determination, taking into account the realities of what this particular individual is likely to face in prison. We find no error in the district court's consideration of the nature of the offense in conjunction with the rest of the circumstances of this case. Accordingly, we affirm the downward departure for susceptibility to abuse in prison.

## CONCLUSION

We find no abuse of discretion in the district court's conclusion that Parish's conduct was "outside the heartland" of the offense, nor do we find an abuse of discre-

---

5. We recognize that some of our sister circuits have held that the nature of the offense is an impermissible factor in determining susceptibility to abuse in prison. *See, e.g., Wilke*, 156 F.3d at 753–54; *United States v. Kapitzke*, 130 F.3d 820, 822 (8th Cir.1997). We decline to make such a categorical holding. The Sentencing Commission set out certain limited factors, such as race and religion, that may never be considered "under any circum-

stances" in sentencing. *Koon*, 518 U.S. at 106, 116 S.Ct. 2035; U.S.S.G. § 5H1. The nature of the offense and its impact on the likelihood of abuse in prison are not among the forbidden factors. *See* U.S.S.G. § 5H1. To add a factor to the very short list of factors the Commission decided could never be considered "would be to transgress the policymaking authority vested in the Commission." *Koon*, 518 U.S. at 107, 116 S.Ct. 2035.

tion in the court's finding that Parish was highly susceptible to abuse in prison. Accordingly, we find no error in the downward departure from the Guidelines range. The sentence is

**AFFIRMED.**

GRABER, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's conclusion that the district court acted within its discretion in determining that Defendant's offense conduct lay outside the heartland. I dissent, however, from the holding that the district court properly departed based on Defendant's susceptibility to abuse in prison.

By condoning the district court's consideration of the nature of the offense in deciding to depart downward, the majority distorts the nature of the Guidelines and joins the wrong side of a circuit split. The majority's message is that if society so roundly condemns a particular crime that even other criminals are especially appalled by it, the "average Joe" who perpetrates the crime should spend *less* than the average time in prison for that crime. I am unable to join in an opinion sending such a message. In my view, the district court erred.

The majority and I begin with the same initial premise: A defendant's extraordinary and peculiar susceptibility to abuse by other inmates while in prison may warrant a departure. *Koon v. United States,*

518 U.S. 81, 112, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *United States v. Lara,* 905 F.2d 599, 603 (2d Cir.1990). For example, in *Koon,* the defendants were particularly vulnerable because of their status as police officers who had beaten Rodney King. 518 U.S. at 89, 116 S.Ct. 2035. "The extraordinary notoriety and national media coverage of this case, coupled with the defendants' status as police officers, make Koon and Powell unusually susceptible to prison abuse." *Id.* at 112, 116 S.Ct. 2035. The Court affirmed the district court's downward departure on that ground.

The majority and I differ on how that premise applies to a case like this one. Here, the district court found that Defendant, "like the officers in *Koon,*" was susceptible to abuse in prison because of a "combination" of factors: Defendant's "stature, ... demeanor, ... [and] naivete," plus the "nature of the offense." The record does not support a finding of unusual susceptibility based on those factors.

## 1. *Demeanor, Stature, and Naivete*

The district court did not explain what it meant by Defendant's "demeanor" and "stature." The majority finds some ambiguity in the reference to "stature"[1] and speculates that the reference "may have been related to the way [Defendant] carried himself" or that "[p]erhaps the judge thought" that Defendant "looked physically weak." Majority op. at 12. Even if that is what the district court meant, such

---

**1.** "Stature" means, in a physical sense, "natural height" while in a standing position. Webster's Third New Int'l Dictionary 2230 (unabridged ed.1993). Defendant is 5 feet 11 inches tall, which is unremarkable.

"Stature" also can mean one's standing in the community. *Id.* The only mention of "stature" in the testimony was Dr. Scolatti's statement that a pedophile with Defendant's "stature, his lack of experience with the criminals," would be "a prime candi-

date to experience a lot of grief." If Dr. Scolatti and the district court used "stature" in the social sense, they must have been referring to his "average Joe," normal, middle-class life in the community—which (according to Dr. Scolatti) differentiates him from some of the "tough convicts" in prison but, of course, does not differentiate him from most citizens. Whether "stature" refers to physical or social characteristics, Defendant is unremarkable.

a departure is based on Defendant's physical, mental, or emotional condition. The Guidelines specifically *discourage* departing on those grounds. In U.S.S.G. §§ 5H1.3 and 5H1.4, the Guidelines caution that a defendant's physical, mental, or emotional condition is "not ordinarily relevant" in deciding whether to depart. This discouragement does not mean that a departure is wholly impermissible. Rather, the district court still may depart based on a defendant's physical, mental, or emotional condition if the condition is *extraordinary*. Other circuits have confirmed that departures based on susceptibility to abuse in prison due to physical size or demeanor are appropriate, but only in extraordinary cases. *Compare United States v. Drew*, 131 F.3d 1269, 1271 (8th Cir.1997) (noting a child pornography offender's "average size and good health" in reversing a downward departure for susceptibility to abuse in prison), *with Lara*, 905 F.2d at 603 (affirming a downward departure for extraordinary susceptibility to abuse in prison because of the offender's diminutive size, immature appearance, and bisexual orientation).

Here, the record does not support a departure based on Defendant's physical, mental, or emotional state. Defendant is 34 years old and in good physical health. He stands 5 feet 11 inches tall[2] and weighs 190 pounds. Apart from his pedophilia that led to the crime of conviction and his reaction to the criminal proceeding itself,

Defendant's mental health also is good. Defendant does not abuse substances. He graduated from high school, attended some college, served in the Air Force (from which he received an honorable discharge), and has a record of full-time employment at which he earned up to $31,700 per year. The majority emphasizes (majority op. at 12–13) the testimony that Defendant's "overall demeanor" is "positive and caring." Fortunately, however, those are not extraordinary characteristics. On this record, Defendant's "stature" and "demeanor" do not render his case so extraordinary as to warrant a departure on this ground.

The district court's reliance on Defendant's "naivete" appears to refer to Defendant's unfamiliarity with the criminal justice system—what his own expert witness, Dr. Scolatti, referred to as "his lack of experience with the criminals."[3] The majority concedes that the Guidelines *necessarily* have taken into account already a defendant's experience—or lack thereof—in prior criminal proceedings. Majority Op. at 13. The Sentencing Commission formulated six criminal history categories precisely to classify defendants based on their differing degrees of criminal experience, whether they be "naive" first offenders or hardened career criminals. An offender like Defendant, who is classified in Criminal History Category I, already receives a lesser sentence than a similar offender with a more extensive criminal history. U.S.S.G. ch. 5, pt. A. When the

**2.** The majority speculates: "Perhaps the judge thought Parish looked smaller than the probation officer thought he looked." Majority op. at 1031. Defendant's actual height is an undisputed fact, so it is irrelevant whether the district court and the probation officer had different thoughts about how tall he looked to them.

**3.** The majority speculates that "naivete" could refer to Defendant's lack of sophistication regarding computers. Majority op. at

1031. Assuming that this is what the district court meant, and assuming that Defendant's failure to download the images pertains to *offender* as well as *offense* characteristics, there is no logical nexus to susceptibility to abuse in prison. No witness suggested, nor does logic or common experience suggest, that the absence of sophisticated computer skills plus a criminal's assumption that he would not get caught bear on susceptibility to abuse in prison.

Guidelines already consider a particular factor, a departure is warranted only in *extraordinary* circumstances. *Koon,* 518 U.S. at 95, 116 S.Ct. 2035.

The record does not support a finding of extraordinary naivete. Rather, the record reflects exactly the kind of naivete that would be expected of an offender with Defendant's criminal history. Describing Defendant's "lack of experience with the criminals," Dr. Scolatti stated: "[H]e's led a pretty normal, average Joe life; he hasn't been involved in crime, he hasn't been involved in drugs, he hasn't been involved in your typical anti-social personality. He's been a very law-abiding citizen—aside from this." This kind of "naivete"—the "average Joe['s]" absence of a prior criminal history and corresponding lack of experience with criminals—is accounted for fully in the criminal history guidelines.

The record offers no other justification for a departure based on Defendant's naivete. When the district court asked Dr. Scolatti whether Defendant's risk of harm inside the prison—"given his characteristics"—would be "different than the ordinary person involved in sex offenses with children," the answer was:

> [*N*] o, they all come in with a bad label, and it's a difficult time for all of them. And *we certainly have a wide range of guys,* from very tough convicts *to average people.*

(Emphasis added.) In the circumstances, the district court erred in departing for susceptibility to abuse in prison based on naivete. *See Drew,* 131 F.3d at 1271 (holding, in a child pornography case, that the district court abused its discretion by departing for susceptibility to abuse in prison based in part on the defendant's "naivete"

when the defendant was "of average size and in good health").

### 2. *Nature of the Offense*

The Guidelines do not address whether the nature of the offense, possession of child pornography, is an encouraged or discouraged factor on which to base a departure. However, our sister circuits that have considered this precise issue have held uniformly that the nature of the offense alone cannot support a departure. *United States v. DeBeir,* 186 F.3d 561, 567–68 (4th Cir.1999); *United States v. Wilke,* 156 F.3d 749, 753–54 (7th Cir.1998); *United States v. Kapitzke,* 130 F.3d 820, 822 (8th Cir.1997). I find their reasoning persuasive because, by definition, the nature of the offense *necessarily* is taken into account in establishing the Guideline for the offense; indeed, it is the essence of having a Guideline in the first place.

The district court noted that sex offenders, especially sex offenders who target children, are routinely subjected to abuse in prison. That may be so.[4] However, the nature of the offense cannot take a case out of the heartland for that very offense. It would be contradictory to hold otherwise. The Commission has drafted a Guideline for possessing child pornography. The "nature of the offense" is the same for all offenders sentenced under that Guideline. Granting a departure based on "mere membership" in the class of people who possess child pornography improperly adjusts the Guideline for all class members. *Kapitzke,* 130 F.3d at 822. If the nature of the offense of possessing child pornography alone could constitute a factor warranting departure, effectively there would be no Guideline.

*DeBeir,* 186 F.3d at 568; *see also Wilke,* 156 F.3d at 754 (holding that to allow a

---

4. As noted, Dr. Scolatti testified that child-pornography offenders *"all* come in with a bad label, and it's a difficult time for *all* of them." (Emphasis added.)

departure on the "nature of the offense" alone would "eviscerate the recommended range for this crime and undermine the goals of the Sentencing Reform Act").

I thus would join our sister circuits in holding that a district court may not depart downward based solely on its conclusion that the nature of the offense is likely to subject the defendant to abuse while in prison and, to this extent, again agree with the majority. Majority op. at 1031–32. But, I would go further than the majority and hold that the nature of the *offense* may not be considered at all in examining the nature of the *offender*, such as the factors that may make a particular offender extraordinarily vulnerable. *Compare Wilke*, 156 F.3d at 753–54 (rejecting categorically consideration of the nature of the offense as a ground for departure in any case), *with DeBeir*, 186 F.3d at 567, and *Kapitzke*, 130 F.3d at 822–23 (rejecting consideration of the nature of the offense as a ground for departure in particular cases in which no other factor made the defendant extraordinarily vulnerable). *See also* U.S.S.G. § 5K2.0 (policy statement) (describing departure factors as "offense" or "offender" characteristics).

In this case, the result should be the same whether or not the "nature of the offense" is part of the calculation. Even if the nature of the offense is considered, the combination of factors does not warrant a departure for extraordinary susceptibility to abuse while in prison. Defendant's is not that "extremely rare" situation contemplated by the Guidelines in which a combination of singularly benign factors creates a collective record warranting departure. U.S.S.G. § 5K2.0 (commentary).

### 3. *Conclusion*

In summary, the district court erred when it based a downward departure in part on Defendant's susceptibility to abuse in prison. Although I find no abuse of discretion in the district court's conclusion that Defendant's conduct was outside the heartland of the offense, the district court erred in relying on Defendant's susceptibility to abuse in prison to support its downward departure. Because I cannot tell from the record whether the district court would have departed downward or, if so, whether it would have departed to the same extent had the court considered only the offense conduct, I would vacate and remand for resentencing. I therefore dissent.