UNITED STATES of America, Plaintiff–Appellant,

v.

Aaron THOMPSON, Defendant–Appellee.

No. 01–30279.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 10, 2002.

Filed Dec. 6, 2002.

William W. Mercer, United States Attorney, and Marcia Good Sept, Assistant U.S. Attorney, Billings, MT, for plaintiff-appellant United States of America.

Wendy Holton, Attorney at Law, Helena, MT, for defendant-appellee Aaron Thompson.

Before BEEZER, GOULD, and BERZON, Circuit Judges.

GOULD, Circuit Judge:

The government appeals the district court's sentencing of Aaron Thompson to forty-four months for possession and distribution of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and 2252A(a)(5)(B). The issue is whether the extent of the district court's downward departure from the United States Sentencing Guidelines was reasonable in light of the rationale given for the departure. The district court's basis for departure was its conclusion that Thompson was not in the "heartland" of the offenses for which he was convicted. Viewing this differently under applicable law, we conclude that the

district court abused its discretion in sentencing Thompson to forty-four months based on its "heartland" conclusion.

In justifying the downward departure, the district court treated as persuasive a number of considerations that in our view were not adequate to remove Thompson from the heartland. Those considerations included Thompson's background, education, and family history, as well as his low risk of engaging in sexual offenses against children and his need for rehabilitative therapy. None of these factors individually, nor all of them collectively, warranted the conclusion that Thompson's conduct falls outside the "heartland" of the offense under *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). We conclude the sentence cannot stand because of the district court's reliance on prohibited, discouraged, or inadequately explained factors. We vacate the sentence and remand for resentencing.

**I**

In August 2000, Thompson opened a file server on the internet with a manifest purpose to trade child pornographic images with others. On four occasions between August 28, 2000 and November 6, 2000, four different undercover Federal Bureau of Investigation (FBI) agents had online correspondence with Thompson, who obtained what he believed were child pornographic images from the agents and, in exchange, gave them fifty-eight different child pornographic images. The FBI obtained a warrant to search Thompson's home, where they discovered more than 10,000 images of child pornography on the hard drive of his computer. And that was not all. From the computer the FBI gained evidence that he had distributed more than 47,000 such images since August 2000.

Thompson entered a plea agreement on February 16, 2001, and on March 6, 2001,

he pleaded guilty to two counts of distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2) and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Based on the specific offense characteristics and other adjustments detailed in the presentence report, Thompson's total offense level was 29. Because Thompson had no prior offenses, he had a criminal history category of I. The offense level and criminal history category together yield a sentencing range of 87 to 108 months. In the plea agreement, the parties agreed to a joint sentence recommendation, at the bottom of the range, of 87 months.

At the sentencing hearing, the district court found that Thompson was not in the heartland of the offenses covered in 18 U.S.C. §§ 2252A(a)(2) and 2252A(a)(5)(B). The court concluded, "I do not believe that you fall in the heartland and, therefore, I am making . . . a seven-level departure on the ground that you do not fall in the heartland and for the reasoning articulated by the United States Supreme Court in the *Koon* case." Thus the court departed downward from the offense level set forth in the plea agreement, changing the offense level from 29 to 22. With the criminal history category of I, the result was a new sentencing range of 41 to 51 months. Taking into account the reasons that impelled it to depart downward, the court sentenced Thompson to 44 months rather than to the 87 months specified by assent of the parties in the plea agreement.

The district court's conclusion that Thompson was not in the heartland, permitting a striking downward departure to about half the agreed sentence, was based on several expressly articulated factors. The court stressed that Thompson viewed the child pornographic images at home and never at work; that he segregated the files in a separate location on his computer to

make them inaccessible to others; that he had never been involved in any prior criminal conduct; that he had no history of drugs or sexual abuse, nor was there any such history in his family; that he was educated; and that he did not pose a risk of engaging in sexual offenses against children. The court also said that Thompson showed potential for rehabilitation, and expressed concern that a longer sentence would necessarily delay access to a rehabilitation program, because Thompson would not be permitted to enter such a program until a good part of his sentence had been served. The district court did not explain how these factors, either standing alone or cumulatively, are sufficiently unusual to bring this case outside the heartland of the offense. As the court did not justify its use of these factors with adequate reference to "the sentencing guidelines, policy statements and official commentary of the Sentencing Commission," we reverse and remand for resentencing. 18 U.S.C. § 3553(b); *see also United States v. Working,* 287 F.3d 801, 807 (9th Cir.2002).

## II

■ A district court's decision to depart from the Guidelines is reviewed under the abuse of discretion standard. *See Koon,* 518 U.S. at 99, 116 S.Ct. 2035; *United States v. Caperna,* 251 F.3d 827, 830 (9th Cir.2001). In so doing, we give "substantial deference" to the district court's decision to depart, because "it embodies the traditional exercise of discretion by a sentencing court." *Koon,* 518 U.S. at 98, 116 S.Ct. 2035.

## III

■ To better understand the significance of the "heartland" concept, we begin with the introduction to the Federal Sentencing Guidelines:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, *one to which a particular guideline linguistically applies but where conduct significantly differs from the norm,* the court may consider whether a departure is warranted.

U.S.S.G. Ch. 1, Pt. A, Intro. Comment 4(b) (2002) (emphasis added). As we said in *United States v. Stevens,* 197 F.3d 1263 (9th Cir.1999), to determine whether an offense falls in the heartland targeted by a statute, a court must make a "comparison ... between the conduct of the defendant and the conduct of other offenders." *Id.* at 1268 (citing *Koon,* 518 U.S. at 104–05, 116 S.Ct. 2035).[1] In this case, the court

---

1. We presented a summary of our law on sentencing in our recent decision in *United States v. Parish,* 308 F.3d 1025, 1027 (9th Cir., Oct.18, 2002):

   A district court may depart from the applicable Guideline range if it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." U.S.S.G. § 5K2.0 (policy statement) (quoting 18 U.S.C. § 3553(b)). In *Koon,* the Supreme Court explained how a district court should decide whether to depart from the range

prescribed in the particular Guideline. 518 U.S. at 93–94, 116 S.Ct. 2035. First, the district court should identify what features of the case make it unusual. *Id.* at 95, 116 S.Ct. 2035. Next, the court must determine whether the ground on which it is contemplating a departure is forbidden, encouraged, or discouraged by the Guidelines. *Id.* The court may not depart on a forbidden ground. *Id.* at 95–96, 116 S.Ct. 2035. The court may depart on an encouraged ground as long as that encouraged ground is not already taken into account by the particular offense guideline. *Id.* at 96, 116 S.Ct. 2035. If a factor is discouraged, or encouraged but already taken into account, the district

did not make such a comparison, and there is little in the record to show that Thompson's conduct differs from that of other offenders. Some of the features mentioned by the district court may warrant sentencing at the low end of the designated range, but they do not remove Thompson's conduct from the heartland.[2]

The record and voluminous proof of maintenance and distribution of child pornography do not show that Thompson's manner of accessing and storing the child pornographic files differentiated his conduct from that of the typical offender engaged in possession and distribution of child pornography. Thompson's own expert witness testified that it is not unusual for viewers of pornography to restrict such conduct to the home, or to conceal the pornographic files in a hidden location on the computer.[3] Even if these furtive prac-

tices were unusual for users of pornography, and there is no showing that they are, they would not remove Thompson's conduct from the heartland of the offenses to which he pled guilty. Concealing one's files from the casual observer and distributing illicit images only to those who seek them out do not alter the criminal acts of possession and distribution of child pornography in any way that makes the offenses different from the ordinary case.

It was also incorrect for the court to consider Thompson's lack of a criminal record as a basis for concluding that Thompson's conduct was outside the heartland of his crimes. The Guidelines give the rule with clarity:

> The lower limit of the range from Criminal History Category I is set for a first offender with the lowest risk of recidivism. Therefore, a departure below the

court may depart only if the factor is "present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Id.* If the Guidelines do not mention the factor at all, a district court must consider whether this particular factor warrants departure. *Id.*

2. It is permissible for a court to consider factors other than the defendant's conduct when fashioning a sentence. The Guidelines provide that

> [i]n determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law.

U.S.S.G. § 1B1.4 (2002). As the commentary on this provision explains, a court may consider "information that the guidelines do not take into account in determining a sentence within the guideline range or . . . in determining whether and to what extent to depart from the guidelines." U.S.S.G. § 1B1.4, cmt. background (2002).

3. In contrast, while upholding a district court's downward departure in *Parish*, we stressed that the district court properly relied

upon Parish's expert, who was asked by the district court "to compare Parish's conduct with the conduct of a 'typical' offender under this same statute." *Parish*, 308 F.3d at 1027. That expert "concluded that Parish's conduct was significantly less serious than that of offenders in other cases involving possession of child pornography." *Id.* We note that the offender Parish had "not affirmatively downloaded the pornographic files, indexed the files, arranged them in a filing system, or created a search mechanism on his computer for ease of reference or retrieval." *Id.* Indeed, the images that Parish possessed "had been downloaded automatically into his Temporary Internet Cache file." *Id.* In sharp contrast, here Thompson was responsible for a system under which he intentionally downloaded child pornography images received from others and distributed such images to them in return. Indeed, Parish was only responsible for possession, and that apparently arising automatically without his knowledge when he viewed pornographic images on the internet. But Thompson was responsible for a scheme of automatic distribution of child pornography, distributing more than 47,000 images, whatever his motives.

lower limit of the guideline range for Criminal History Category I on the basis of the adequacy of criminal history cannot be appropriate.

U.S.S.G. § 4A1.3, policy statement (2002). In *Koon* the United States Supreme Court quoted this language in the Guidelines and concluded that a downward departure based on a defendant's status as a first-time offender is not warranted because "[t]he Commission took that factor into account in formulating the criminal history category." 518 U.S. at 111, 116 S.Ct. 2035. *See also United States v. Dickey,* 924 F.2d 836, 838 (9th Cir.1991) ("The Guidelines make due allowance for the possibility of a defendant being a first offender.").

The district court also did not justify its use of Thompson's education in concluding that his offenses were outside the heartland, or as grounds for departing downward. True, Thompson has a bachelor's degree in business technology, and his good education is relevant to his prospects for rehabilitation and for sentencing in a range. Notwithstanding, the Guidelines explain that "[e]ducation and vocational skills are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.2 (2002). In *Koon* the Court made clear that when considering factors that are discouraged in the Guidelines, "the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Koon,* 518 U.S. at 96, 116 S.Ct. 2035 (citation omitted). Neither the district court nor the record provides any reason to believe that Thompson's education makes his case different from the ordinary case.

It is also clear that the district court, in departing downward, attached some significance to the lack of any history of sexual or substance abuse by Thompson himself or in his family. That rationale, however, should not have been a factor in justifying a downward departure where the offenses charged did not include child abuse. As we said in *Stevens,* a child pornography case in which the district court had departed downward, in part because the defendant had not engaged in any sexual acts with children:

> [T]he district court's position is inconsistent with the statutory scheme. Title 18 U.S.C. § 2252A(a)(5)(B) prohibits possession alone. Defendant knowingly possessed more than 350 images of child pornography.... In essence, the district court held that possession alone was insufficient to place Defendant in the heartland of a possession offense. Possession, however, is what the statute proscribes.

*Stevens,* 197 F.3d at 1269.

The same rule and reasoning apply here. As noted, Thompson possessed more than 10,000 images of child pornography and distributed more than 47,000 such images. That he did not engage in other offenses such as child sexual abuse, and was in the district court's view not particularly likely to engage in such sexual offenses, is wholly irrelevant. Thompson's culpable conduct in possessing and distributing large amounts of child pornography places him within the heartland for those offenses.

In significant part, the district court, in justifying the downward departure, stressed Thompson's background and family rather than his conduct. The district court doubtless emphasized these factors to suggest that Thompson is particularly likely to respond well if placed in a rehabilitation program. The district court was concerned that Thompson should receive treatment as soon as possible, and that a longer sentence would delay his opportunity to receive treatment. The court explained that in fashioning a sentence in this case, "the most significant factor, oth-

er than those two of protecting the public and preventing recidivism, is to get [Thompson] some place where [he] can get treatment."

These concerns are judicious and understandable. However, when considering these matters, the district court did not compare Thompson with other offenders convicted of the same offenses of possession and distribution of child pornography. This consideration of potential for rehabilitation, like the other grounds for departure that we reject above, does not justify a "heartland" departure under the circumstances of this case.

■ Many of the district court's concerns would be well taken in a judicial exercise of discretion to sentence low in a prescribed range. They may be relevant to departure on bases other than those articulated, if adequate legal grounds are present. But we cannot accept a misapplication of the heartland concept based on prohibited, discouraged, or inadequately explained factors appearing on the record before us.[4] Any departure on remand must be adequately explained, and, if there is departure, the district court must establish why any factor impelling departure is present to an "extraordinary" or "atypical" degree, as well as how any departure is consistent with the framework of the guidelines and our settled law on sentencing.

**VACATED AND REMANDED**

BERZON, Circuit Judge, concurring:

I write separately to point out two features of Aaron Thompson's Presentence Report that could have been considered by the district court as favoring downward departure, as well as to suggest that district court downward departures in similar cases involving child pornography have become so frequent as to indicate a pattern that may merit consideration by the Sentencing Commission.

1. Thompson's Presentence Report contained a list of "factors that may warrant departure." One encompassed the "heartland" factors that we find the district judge improperly applied. I agree with this holding. While "the Sentencing Guidelines do not displace the traditional role of a district judge in bringing compassion and common sense to the sentencing process" so that "in areas where the Sentencing Commission has not spoken—areas outside the heartland cases considered in the Guidelines—district courts should not hesitate to use their discretion in devising sentences that provide individualized justice ... *they [must] give reasons for their departure that allow us to ensure that the departure was permissible under the law.*" *United States v. Williams*, 65 F.3d 301, 309–10 (2d Cir.1995) (internal quotation marks and citation omitted, emphasis added).

Aside from the general "heartland" factor, Thompson's probation officer also suggested that his post-offense rehabilitation and his impaired volition to control an addiction to child pornography were potential factors warranting departure. The district court failed to consider these possible grounds for downward departure.

Post-offense rehabilitation—as distinguished from post-sentencing rehabilitation[1]—can be a basis for downward depar-

---

4. We reject in this case the government's request at argument that on a remand for resentencing this case be reassigned to a different United States District Judge. We see no evidence of bias, appearance of impropriety, or other ground for such a change, and we are confident that the district court will readily apply the law as clarified by us herein.

1. U.S.S.G. § 5K2.19 precludes downward departure for post-sentencing rehabilitative efforts. The reasons for the Sentencing Commission's amendment to this effect in 2000

ture. In *United States v. Green,* 152 F.3d 1202, 1207 (9th Cir.1998), we noted that "[s]everal circuits have already determined that post-offense rehabilitation may be a basis for departure" and indicated accord with that group. *See also United States v. Kapitzke,* 130 F.3d 820, 823 (8th Cir.1997) ("Because the acceptance of responsibility guideline takes postoffense rehabilitation efforts into account, departure under section 5K2.0 is warranted only if the defendant's efforts are exceptional enough to be atypical of cases in which the acceptance of responsibility reduction is usually granted.").

A relevant consideration under the rubric of post-offense rehabilitation is continuity of needed treatment. Thompson was characterized in expert testimony as having responded to post-offense rehabilitation and as being well-suited to *immediate* continuation of treatment.[2] In discussing Thompson's future treatment, the district judge expressed concern that "although [Thompson does] qualify under [the federal prison system's] initial criteria, and I'm sure will qualify, they're not going to put [him] in [a sex offender treatment] program until [his] sentence approaches the point where most efficient use of the treatment will be available." Thus, a longer sentence for an inmate like Thompson interrupts his post-offense rehabilitation and delays needed treatment.

The district judge indicated that the only federal facility with a diagnosis and treatment program for pedophilia is in Butner, North Carolina. *Cf. United States v. Malley,* 307 F.3d 1032, 1033 (9th Cir. 2002) ("The court specifically requested that the Bureau of Prisons assign Malley to the sex offender treatment program at Butner Federal Correctional Institution."); *see also* 18 U.S.C. § 3553(a)(2) (2002) (directing sentencing courts to consider, *inter alia,* providing "the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). *See generally Williams,* 65 F.3d at 306, 308 (upholding a "heartland" downward departure reducing a sentence from at least 130 months to 60 months because it provided the prisoner, an "excellent candidate for rehabilitation," with immediate eligibility for a treatment program; otherwise he would have had to "wait some six or seven years to begin treatment. If in the interim the Butner program were terminated for budgetary or other reasons or if Williams's resolve weakened under the pressures of prison life, the chance of curing him of his addiction and perhaps his criminal ways would vanish.... [I]f [on the other hand] Williams is cured of his addiction [the shorter sentence] may ultimately serve to protect the public from future criminal acts that Williams might otherwise commit."). On remand, the district court, in my view, has the discretion to consider Thompson's actual post-offense efforts at rehabilitation—as opposed to his potential

---

were that such departures are inconsistent with statutory provisions applying to "imprisoned person[s]" and would "inequitably benefit only those who gain the opportunity to be resentenced *de novo.*" U.S.S.G. § 5K2.19 cmt. background (2002). Consideration by district courts of post-offense, pre-sentencing rehabilitation as a factor for downward departure does not, by contrast, concern persons serving a term of imprisonment or introduce comparably inequitable results among convicted individuals.

2. The expert who conducted Thompson's post-offense rehabilitation stated that he had taken treatment "very seriously. He's participating well in group and in individual [settings]. His insight is growing. His empathy ... is growing also." She expressed concern about potential interruption of this post-offense rehabilitation in the prison system: "[I]f [offenders like Thompson] have a long period of time that they wait [for treatment], sometimes ... they become hardened, and it's harder to reach them."

for rehabilitation—as a basis for downward departure, if sufficiently exceptional.

The district court also failed explicitly to address the Presentence Report's reference to diminished capacity under U.S.S.G. § 5K2.13. *Cf. Malley*, 307 F.3d at 1033 (in which the same district court "granted a five-level downward departure for diminished capacity under § 5K2.13 and extraordinary acceptance of responsibility"). Thompson's Presentence Report cited *United States v. McBroom*, 124 F.3d 533 (3d Cir.1997), in which the Third Circuit considered an addiction to child pornography. *McBroom* emphasized that "McBroom is not seeking a downward departure because he was a victim of sexual abuse. Rather, McBroom claims that at the time of the offense, he suffered from a significantly reduced mental capacity. McBroom points to his childhood merely to explain why his mental capacity was reduced to the point where he felt compelled to possess child pornography." *Id.* at 551.

In 1998, the Sentencing Commission added an application note defining the term "significantly reduced mental capacity" in Guideline § 5K2.13: " 'Significantly reduced mental capacity' means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) *control behavior that the defendant knows is wrongful*." U.S.S.G. § 5K2.13, cmt. n. 1 (2002) (emphasis added). The Commission explicated its definition as follows:

> The amendment ... defines "significantly reduced mental capacity" in accord with the decision in *United States v. McBroom*, 124 F.3d 533 (3d Cir.1997). The *McBroom* court concluded that "significantly reduced mental capacity" included both cognitive impairments (*i.e.,* an inability to understand the wrongfulness of the conduct or to exercise the

power of reason) and volitional impairments (*i.e.,* an inability to control behavior that the person knows is wrongful). The application note specifically includes both types of impairments in the definition of "significantly reduced mental capacity."

*U.S. Sentencing Guidelines Manual* app. C, amendment 583 (2002). *See United States v. Sadolsky*, 234 F.3d 938, 942 (6th Cir.2000) ("the amendment to § 5K2.13 expanded the definition of ['significantly reduced mental capacity'] to include volitional impairments."); *see also United States v. Silleg*, 311 F.3d 557, 563–64 (2d Cir. 2002) ("In light of the plain language of the Sentencing Guidelines and the views of most other circuits to consider the issue, we hold that the diminished capacity of a defendant in a child pornography case may form the basis for a downward departure where the requirements of section 5K2.13 are satisfied.").

There is evidence in the record that Thompson tried on multiple occasions to erase all his computer files containing child pornography but was drawn back in an addictive manner. Expert testimony at sentencing suggested that Thompson had an addiction to the material for which he was convicted. On remand it is open to the district court to consider, consistent with the Sentencing Commission's directives, whether Thompson qualifies for a downward departure based on Guideline § 5K2.13, as illuminated by *McBroom*.

2. Turning to the wider context of this appeal, it bears noting that *Koon v. United States*, 518 U.S. 81, 98–99, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) emphasized the role of district courts as front-line sentencing decisionmakers. District courts have, *Koon* noted, "an institutional advantage over appellate courts in making[departure] determinations, especially as they see so many more Guidelines cases than appellate

courts do," and for that reason are an "important source of information" for the Sentencing Commission. *Id.* (internal quotation marks and citation omitted). *Koon* quoted from the Introduction to the Guidelines, which emphasizes that

> The Commission is a permanent body, empowered by law to write and rewrite guidelines, with progressive changes, over many years. By monitoring when courts depart from the guidelines and by analyzing their stated reasons for doing so and court decisions with references thereto, the Commission, over time, will be able to refine the guidelines to specify more precisely when departures should and should not be permitted.

*Id.* at 93–94, 116 S.Ct. 2035 (quoting U.S.S.G. ch. 1, pt. A, introductory cmt. 4(b)). The Court then went on to quote with approval from the following passage written by then-Chief Judge Breyer in *United States v. Rivera,* 994 F.2d 942, 951 (1st Cir.1993):

> To ignore the district court's special competence—about the "ordinariness" or "unusualness" of a particular case—would risk depriving the Sentencing Commission of an important source of information, namely, the reactions of the trial judge to the fact-specific circumstances of the case, which reactions, reduced to written reasons for departure, can *help the Commission determine whether, and how, Guidelines revision should take place.*

(Emphasis added).

The district judge in this case did not act anomalously in departing downward when sentencing a first offender (Criminal History Category I) in a child pornography case. In the last six years, considering published opinions alone, ten cases from seven different Circuits have resulted in appellate reversal of district judges' decisions to depart downward in first-offend-

er child pornography convictions. *See United States v. Goldberg,* 295 F.3d 1133 (10th Cir.2002); *United States v. Grosenheider,* 200 F.3d 321 (5th Cir.2000); *United States v. Davis,* 204 F.3d 1064 (11th Cir.1999); *United States v. Stevens,* 197 F.3d 1263 (9th Cir.1999); *United States v. Drew,* 131 F.3d 1269 (8th Cir.1997); *Kapitzke,* 130 F.3d 820; *United States v. Everett,* 129 F.3d 1222 (11th Cir.1997); *United States v. Wind,* 128 F.3d 1276 (8th Cir.1997); *United States v. Goossens,* 84 F.3d 697 (4th Cir.1996); *United States v. Barton,* 76 F.3d 499 (2d Cir.1996). *See also United States v. DeCosta,* 37 F.3d 5, 9 (1st Cir.1994) ("Child pornography is not a victimless crime, but for DeCosta and his family this is surely a very sad affair. We commend the district court for its multiple efforts to find a solution best suited to the circumstances."); *United States v. Deane,* 914 F.2d 11 (1st Cir.1990); *United States v. Studley,* 907 F.2d 254 (1st Cir.1990); Edward R. Becker, *Flexibility and Discretion Available to the Sentencing Judge Under the Guidelines Regime,* Fed. Prob., Dec. 1991, at 12 (describing an earlier dialogue between federal judges and the Sentencing Commission on child pornography sentencing). The downward departures that were reversed in these cases, added to that which we reverse for Thompson, are precisely the "reactions of ... trial judge[s] to ... fact-specific circumstances, which ... reduced to written reasons for departure, can help the Commission determine whether, and how, Guidelines revision should take place." *Rivera,* 994 F.2d at 951. One relevant circumstance the Commission may particularly wish to consider is the delay in sex offender treatment in the federal prison system—specifically at its Butner, North Carolina facility—resulting from lengthy sentences.

With these comments I concur in the opinion.