UNITED STATES of America,
Plaintiff–Appellant,

v.

Donald G. STEVENS, Defendant–
Appellee.

No. 98–30289.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 13, 1999.

Decided Dec. 2, 1999.

Doug Wilson and Nina Goodman, United States Department of Justice, Washington, D.C., for the plaintiff-appellant.

Alan Ellis and Wayne Anderson, Law Offices of Alan Ellis, Sausalito, California, for the defendant-appellee.

Before: NOONAN, THOMPSON, and GRABER, Circuit Judges.

GRABER, Circuit Judge:

Defendant Donald G. Stevens pleaded guilty to possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). In imposing sentence, the district court departed downward under the Sentencing Guidelines, on the ground that Defendant's conduct was not within the "heartland of cases" covered by the applicable Guideline. The government appeals the district court's downward departure.[1] We vacate the sentence and remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

■ Because defendant pleaded guilty, we view the record in the light most favorable to the government. *See United States v. Iverson*, 162 F.3d 1015, 1018 (9th Cir.1998).

Beginning in 1995, Defendant began downloading images of child pornography from the Internet to his laptop computer. Defendant obtained the pornographic images by entering Internet chat rooms and posting the message "list me." In response, other chat room participants added Defendant to Internet mailing lists and sent him images of child pornography that he then downloaded to his computer's hard drive.

In September 1997, Defendant took his computer to a shop to be repaired. While searching for computer viruses, a computer repair technician discovered files containing child pornography on the computer's hard drive. The technician contacted the Anchorage Police Department, who in turn referred the case to the Federal Bureau of Investigation (FBI). Pursuant to a warrant, FBI agents searched Defendant's computer and found several files containing child pornography. Many of the files contained images of pre-teen children. There also were images of very young children engaging in bestiality and sado-masochistic activities. Except for the files on Defendant's computer, the agents found no additional evidence of child pornography in their search of Defendant's residence.

Defendant pleaded guilty to one count of possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).[2] The corresponding section of the Sentencing Guidelines is section 2G2.4,[3] which provides for a

---

1. There is no challenge to the conviction, which we therefore affirm.

2. As pertinent, 18 U.S.C. § 2252A(a)(5)(B) provides that one who

knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer,

shall be [fined under Title 18 or imprisoned for not more than five years, or both].

3. U.S.S.G. § 2G2.4 provides in pertinent part:
 *Possession of Materials Depicting a Minor Engaged in Sexually Explicit Conduct*
 (a) Base Offense Level: 15
 (b) Specific Offense Characteristics
 (1) If the material involved a prepubescent minor or a minor under the age of twelve years, increase by 2 levels.
 (2) If the offense involved possessing ten or more books, magazines, periodicals, films, video tapes, or other items, containing a visual depiction involving the sexual exploitation of a minor, increase by 2 levels.

base offense level of 15. *See* U.S.S.G. § 2G2.4(a). The presentence report (PSR) recommended that Defendant's offense level be increased by two levels, because some of the images that Defendant possessed depicted minors under the age of 12. *See* U.S.S.G. § 2G2.4(b)(1). The PSR further recommended increasing Defendant's offense level by two levels, because Defendant obtained the images by using his computer. *See* U.S.S.G. § 2G2.4(b)(3). The PSR also recommended reducing Defendant's offense level by three levels for his acceptance of responsibility. *See* U.S.S.G. § 3E1.1. The PSR concluded that Defendant's total offense level should be 16 (15 + 2 + 2 − 3). Because Defendant was within criminal history category I, his applicable sentencing range was 21 to 27 months' imprisonment. *See* U.S.S.G. Ch. 5 Pt. A.

Defendant moved for a downward departure, arguing that his conduct did not fall within the "heartland of cases" covered by the applicable Guideline. After a two-day sentencing hearing, the district court adopted the PSR's recommendations, finding that Defendant's offense level was 16 and that he had a criminal history category of I. However, the district court then departed downward three levels pursuant to U.S.S.G. § 5K2.0[4] and 18 U.S.C. § 3553(b), to offense level 13, with a re-

sulting sentencing range of 12 to 18 months' imprisonment. The district court sentenced Defendant to 12 months and one day of imprisonment, three years of supervised release, and a $10,000 fine.

The government brings this timely appeal to challenge the district court's downward departure.

## DISCUSSION

### A. *Standard of Review*

■ We review for an abuse of discretion a district court's decision to depart from a Guideline sentence. *See United States v. Sablan,* 114 F.3d 913, 916 (9th Cir.1997) (en banc) (citing *Koon v. United States,* 518 U.S. 81, 98–100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)), *cert. denied,* 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). In doing so, we give "substantial deference" to the district court's decision to depart, because "it embodies the traditional exercise of discretion by a sentencing court." *Koon,* 518 U.S. at 98, 116 S.Ct. 2035.

### B. *General Requirements for Granting a Downward Departure*

■ The Sentencing Guidelines " 'specify an appropriate [sentencing range] for each class of convicted persons' based on various factors related to the offense and

---

(3) If the defendant's possession of the material resulted from the defendant's use of a computer, increase by **2** levels.

4. U.S.S.G. § 5K2.0 provides in pertinent part:

Under 18 U.S.C. § 3553(b), the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Circumstances that may warrant departure from the guideline range pursuant to this provision cannot, by their very nature, be comprehensively listed and analyzed in advance. The decision as to whether and to what extent departure is

warranted rests with the sentencing court on a case-specific basis. Nonetheless, this subpart seeks to aid the court by identifying some of the factors that the Commission has not been able to take into account fully in formulating the guidelines. Any case may involve factors in addition to those identified that have not been given adequate consideration by the Commission. Presence of any such factor may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing court. Similarly, the court may depart from the guidelines, even though the reason for departure is taken into consideration in determining the guideline range (*e.g.*, as a specific offense characteristic or other adjustment), if the court determines that, in light of unusual circumstances, the weight attached to that factor under the guidelines is inadequate or excessive.

the offender." *Koon,* 518 U.S. at 92, 116 S.Ct. 2035 (quoting U.S.S.G., Ch. 1, Pt. A). If a case is an "ordinary one," a federal district court is required to impose a sentence that falls within the applicable Guideline range. *See id.*

A district court may depart from the applicable Guideline range if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the [United States] Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). To determine whether the Commission adequately considered a certain circumstance, courts are to "consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." *Id.*

In creating the Guidelines, the Commission did not take into account those cases that are "unusual." *See Koon,* 518 U.S. at 93, 116 S.Ct. 2035. The introduction to the Guidelines provides in part:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S.S.G. Ch. 1, Pt. A, Intro. Comment 4(b). Therefore, because the Commission did not adequately take into consideration atypical cases, factors that may make a case unusual allow for departure. *See Koon,* 518 U.S. at 94, 116 S.Ct. 2035.

In *Koon,* the Supreme Court summarized the proper analysis for a district court to use when deciding whether to depart:

> If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. If a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guideline's heartland. The court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be "highly infrequent."

518 U.S. at 95–96, 116 S.Ct. 2035 (citations and internal quotation marks omitted).

### C. The District Court's Decision to Depart Downward

In a thoughtful published opinion, the district court set out its reasons for departing downward. At the outset, the district court stated "that the heartland of the offense [of possessing child pornography] and the offenders who commit it has not been well defined." *United States v. Stevens,* 29 F.Supp.2d 592, 599 (D.Alaska 1998). The court reasoned that this was so because possession of child pornography is not a frequently prosecuted offense and "there is no opportunity to rely on social science literature to characterize the heartland of offenders." *Id.* at 601. The district court decided, therefore, to "approach the issue indirectly for purposes of distinguishing between heartland, or typical offenders, on the one hand, and worst or least offenders on the other," *id.,* by looking to Supreme Court cases interpreting *Congress' intent* behind the enactment of laws prohibiting the possession of child pornography, *see id.* at 602. The district court concluded that Congress prohibited

the possession of child pornography for three reasons: (1) the receipt and possession of child pornography encourage its production; (2) pedophiles can use child pornography to seduce their victims; and (3) pornographic materials are a permanent record of a child's abuse, which can haunt the child for years to come. *See id.* at 603.

The district court ruled that an offender "whose relevant conduct constituted a greater offense or whose conduct substantially contributed to the harms identified by Congress in enacting the statutes in question," would be a "worst offender" who is eligible for an upward departure. *Id.* The district court concluded that Defendant was not a worst offender, because he was "not clearly guilty of a more serious offense," did not use his collection of child pornography to seduce children, and did not directly encourage anyone to produce child pornography. *Id.* at 603–04.

Additionally, the district court concluded that Defendant's contribution to the harms that Congress sought to prevent "was de minimis," because "[n]o victim past, present or future is likely to be harmed solely or even significantly because of anything [Defendant] did or failed to do." *Id.* at 605. In so concluding, the district court identified two ways in which offenders like Defendant collectively contribute to the harms that Congress sought to prevent: "(1) encouraging, by their consumption, continued production of child pornography, and (2) encouraging, by their consumption, further distribution of the pornographic images once they are produced." *Id.*

With respect to the first point, the district court reasoned that Defendant's encouragement of the production and distribution of child pornography was "passive." He did not "pay for the images either in cash or in kind," "carry on correspondences with producers and purveyors of the pornography," take "an active part in the management of the chat rooms," or "share his collection with others, or even

disclose to others … that he had the collection." *Id.*

Next, the district court reasoned that Defendant's conduct did not significantly harm the victims of child pornography or significantly contribute to creating a permanent record of past abuse. Because the images that Defendant possessed were mass-produced and mass-mailed, "[t]he incremental harm [Defendant] has caused any specific person is de minimis. Even if [Defendant] had destroyed his collection, the same images would be continuously available." *Id.* at 606. The court also opined that, because "[i]t appears likely that most of the pictures in [Defendant's] possession are more than twenty years old[, i]t is unlikely that any persons pictured in those images would fear that they could be recognized from them today." *Id.* Further, the court found it significant that Defendant did not know any of the people portrayed in his pornographic pictures. *See id.*

After concluding that Defendant was not a "worst offender," the district court defined the heartland of those convicted of possessing child pornography:

> If the purpose of the legislation is the protection of present children and the specific children to be protected are the children pictured in the images, and by reasonable extension those who will be harmed by anyone influenced by the willingness of the possessor to possess, then at the heartland of the Sentencing Guideline are those offenders who exploit victims who are currently children by in effect encouraging child pornography's production so that they can receive and possess it.

*Id.* (citation omitted).

Finally, the district court concluded that Defendant was not within the heartland of those convicted of possessing child pornography. The court focused on two justifications: (1) of those convicted of possessing child pornography, "virtually all have made greater efforts [than Defendant] to involve themselves with producers and distribu-

tors of child pornography," *id.* at 607–08, and (2) because most of the images that Defendant possessed were probably more than 20 years old, Defendant's conduct did not harm those whom Congress sought to protect by prohibiting the possession of child pornography, *see id.* at 606–07.

### D. *Reliance on Congressional Intent Instead of on Offenders' Conduct*

█ The core of the district court's decision was to define the heartland of U.S.S.G. § 2G2.4 by cataloguing the harms that Congress sought to address when it prohibited the possession of child pornography and then deciding the extent to which Defendant contributed to those harms. That methodology contradicts the statutory mandate on sentencing, the Guidelines themselves, and precedent.

The intent of Congress with respect to sentencing is reflected in 18 U.S.C. § 3553(b), which provides in pertinent part:

> The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.

In *Koon,* 518 U.S. at 104–05, 116 S.Ct. 2035, the Court explained that the proper comparison is between the conduct of the defendant and the conduct of other offenders. Similarly, in *United States v. Sanchez–Rodriguez,* 161 F.3d 556, 561 (9th Cir.1998) (en banc), this court made clear that, to determine the heartland of a particular Guideline, a district court is to compare the defendant's conduct with the conduct of all defendants who are sentenced pursuant to the same Guideline.[5]

Those holdings are not surprising, because they carry out the Sentencing Guidelines. The Guidelines expressly direct sentencing courts, when determining the heartland, to compare *conduct. See* U.S.S.G. Ch. 1, Pt. A, Intro. Comment 4(b) ("The Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the *conduct* that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where *conduct significantly differs* from the norm, the court may consider whether a departure is warranted.") (emphasis added).

Why Congress enacted a particular substantive criminal statute ordinarily is not relevant in answering the question whether *what this defendant actually did* is typical of what other offenders do when violating the law in question. The district court was only to compare Defendant's conduct with the conduct of others who are sentenced under the same Guideline. The district court did not do so.

This case provides a classic example of how the outcome could differ if the court were to consider conduct instead of con-

---

**5.** In *Sanchez–Rodriguez,* 161 F.3d at 561, this court concluded that the very small quantity of drugs involved in the predicate felony was a permissible ground for departure. The applicable Guideline did not mention quantity. By contrast, here, the Guideline already takes quantity into account. *See* U.S.S.G. § 2G2.4(b)(2) (providing for a two-level enhancement "[i]f the offense involved possessing ten or more books, magazines, periodicals, films, video tapes, or other items, containing a visual depiction involving the sexual exploitation of a minor"). Moreover, in the present case the district court did not rely, as a basis for downward departure, on the quantity of pornographic images (more that 350) that Defendant possessed. *See United States v. Perreault,* 195 F.3d 1133 (9th Cir.1999) (discussing how to count computerized images of child pornography under the Sentencing Guidelines).

gressional intent. The district court heard evidence that most images of child pornography on the Internet are "old" and found, therefore, that most of the images that Defendant downloaded likewise were "old." Relying on its understanding of *congressional intent*, the court reasoned that only "new" child pornography is the target of the anti-possession law,[6] so Defendant was not in the heartland of the targeted group of possessors. By contrast, if the heartland is defined by *conduct*, one logically would conclude that Defendant's conduct of possessing a substantial number of mostly "old" images, as is "typical" because most images are "old," put him within the heartland.

We are mindful of the predicament that a district court faces when sentencing an offender for a crime that is not often committed in a particular way in the district in question. In such a case, the court may (among other things) survey published cases to determine whether the conduct of the person to be sentenced "significantly differs from the norm." U.S.S.G. Ch. 1, Pt. A, Intro. Comment 4(b).

### E. Reliance on the Absence of Additional Crimes

 The district court also grounded its downward departure on the rationale that others who are convicted of possessing child pornography engage in additional wrongful conduct, while Defendant did not.

Even assuming the factual accuracy of the premise about Defendant,[7] the district court's position is inconsistent with the statutory scheme.

Title 18 U.S.C. § 2252A(a)(5)(B) prohibits possession alone. Defendant knowingly possessed more than 350 images of child pornography. Whether that was the only crime that Defendant committed is immaterial to deciding whether his conduct fell within the heartland of the crime of possession. Unlike in *Sanchez–Rodriguez*, where the issue was the *quantity* of drugs involved, the issue here is whether *the act of possession* (regardless of quantity) is sufficient to put one within the heartland of offenders who are convicted of possessing child pornography. In essence, the district court held that possession alone was insufficient to place Defendant in the heartland of a possession offense. Possession, however, is what the statute proscribes.

The district court's holding, that a defendant who merely possesses child pornography is not within the heartland of offenders sentenced under U.S.S.G. § 2G2.4, also conflicts with persuasive holdings of our sister circuits. In *United States v. Wind*, 128 F.3d 1276, 1277 (8th Cir.1997), the defendant sent to undercover agents computer images of children engaged in sexually explicit conduct. The defendant pleaded guilty to one count of

---

**6.** The district court also erred in asserting that Congress meant to protect only "current" children. This court has recognized that the primary victims of the distribution of child pornography are the people who are depicted in the pornographic materials. *See United States v. Boos*, 127 F.3d 1207, 1209–10 (9th Cir.1997). As long as the images are in circulation, the possessors of the images continue to victimize the people depicted, whether they are seven or seventy-seven.

**7.** The court cited the prevalence of "charge bargaining" in support of its conclusion that many of those who are convicted of the same offense as Defendant actually committed more serious offenses than Defendant and thus were worse offenders. *See Stevens, United States v. Stevens*, 29 F.Supp.2d 592, 601

(D.Alaska 1998). Interestingly, however, the court acknowledged that Defendant's plea to the charged offense did result in benefits to him: (1) Defendant received credit for accepting responsibility despite his limited acknowledgment of responsibility; (2) the government did not argue, pursuant to U.S.S.G. § 2G2.4(b)(2), that Defendant be assessed a two-level increase in his offense level for his possession of *ten or more* visual depictions of child pornography; and (3) a jury could have convicted Defendant of *receiving* child pornography, and not merely *possessing* it, which would have left Defendant vulnerable to several other offense-level increases pursuant to U.S.S.G. §§ 2G2.2 and 2G2.2(b)(3). *See id.* at 601 n. 14.

possession of child pornography in violation of 18 U.S.C. § 2252(a)(4). The district court applied U.S.S.G. § 2G2.4 to determine the defendant's sentencing range, but concluded that the defendant's conduct fell outside the heartland of typical child pornography cases and departed downward pursuant to U.S.S.G. § 5K2.0. Two factors that the district court cited in support of its downward departure were: (1) psychological, psychiatric, and other tests revealed that the defendant was not a typical child predator or pedophile; and (2) although the search warrant and supporting affidavit listed various items of child pornography that would be found at the defendant's residence, investigators found only computer files containing child pornography. *See id.* at 1277–78.

The Eighth Circuit reversed. It held that, because the Guidelines assign different offense levels to different offenses involving the sexual exploitation of children, the defendant was "not entitled to a downward departure on the ground that he did not commit, or have the tendency to commit, a worse crime." *Id.* at 1278. It also rejected the district court's view that the defendant's mere possession of computer files containing child pornography, when the search warrant listed additional items that might be found in a search, justified a downward departure. The court held that the search warrant did not define the heartland of the crime of possession of child pornography and that the defendant possessed enough offending material that it could not be deemed atypical for cases to which section 2G2.4 applies. *See id.*

In *United States v. Barton,* 76 F.3d 499, 501 (2d Cir.1996), the defendant was convicted of knowingly receiving child pornog-

raphy in violation of 18 U.S.C. § 2252(a)(2).[8] The PSR calculated the defendant's base offense level as 15 under U.S.S.G. § 2G2.2. The district court granted a downward departure, reasoning in part that the defendant was not involved in the commercial distribution or production of child pornography, and that there was no evidence that the defendant was a pedophile or had sexually abused children. *See id.*

The Second Circuit reversed. It held that, "[i]n light of the specificity of the [statutes prohibiting child sexual abuse] and the Guidelines," the Sentencing Commission intended § 2G2.2 to extend to one who merely receives child pornography, even if the person is not engaged commercially in its production or distribution. *Id.* at 503.

We agree with the reasoning of those cases. Defendant's failure to engage in *additional* conduct relating to the sexual abuse of children is an impermissible ground for granting a downward departure when sentencing for the crime of possessing child pornography.

## F. *Reliance on Factors Inherent in the Use of a Computer*

 As noted, the district court included in its rationale supporting a downward departure the following: (1) the only thing that Defendant did was to download pornographic images onto his computer's hard drive, and (2) had he not done so, pornographic images of children that are on the Internet would continue to exist and be widely available on-line.

Those rationales for a downward departure are impermissible, because they contradict the applicable Guideline provision that requires a sentencing *enhancement*

---

**8.** A person violates 18 U.S.C. § 2252(a)(2) when the person

knowingly receives, or distributes, any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual

depiction for distribution in interstate or foreign commerce by any means including by computer or through the mails, if—

(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(B) such visual depiction is of such conduct[.]

for the use of a computer. *See* U.S.S.G. § 2G2.4(b)(3) (providing for a two-level enhancement "[i]f the defendant's possession of the material resulted from the defendant's use of a computer"). It is impermissible to consider Defendant less culpable for obtaining pornographic images from the Internet, when the applicable Guideline provides for a sentencing enhancement for using a computer. We must assume that the Sentencing Commission understood that a single user of a computer is small in comparison to the total number of Internet users.

## CONCLUSION

The district court relied on impermissible factors in concluding that Defendant did not fall within the heartland of offenders who are sentenced for possessing child pornography. Specifically, (1) it was erroneous as a matter of law to rely on Congress' intent in creating the offense, instead of on a comparison of offenders' conduct; (2) it was erroneous as a matter of law to rely on the absence of other crimes, beyond the crime of conviction, as being mitigation per se for the crime of conviction; and (3) it was erroneous as a matter of law to depart downward based on factors inherent in the use of a computer, for which the Guidelines actually require enhancement of the sentence. Accordingly, the district court abused its discretion in granting a downward departure.

We emphasize that we have no occasion to determine the appropriate sentence ourselves and that we are not requiring a particular result on remand. The district court may consider any permissible factors in sentencing Defendant and may reach whatever result is appropriate using such factors.

We AFFIRM Defendant's conviction, VACATE the sentence, and REMAND for resentencing in a manner that is consistent with this opinion.