# Matter of G-G-S-, Respondent

*Decided July 17, 2014*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien's mental health as a factor in a criminal act falls within the province of the criminal courts and is not considered in assessing whether the alien was convicted of a "particularly serious crime" for immigration purposes.

FOR RESPONDENT: Bardis Vakili, Esquire, Santa Ana, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Kerri Calcador, Senior Attorney

BEFORE: Board Panel: NEAL, Chairman; GREER, Board Member; KENDALL CLARK, Temporary Board Member.

GREER, Board Member:

This case addresses whether an alien's mental illness should be considered when determining if his or her criminal conviction is for a "particularly serious crime" within the meaning of section 241(b)(3)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3)(B) (2012). In a decision dated December 8, 2011, an Immigration Judge determined that the respondent has been convicted of a particularly serious crime and is therefore ineligible for withholding of removal under both section 241(b)(3)(A) of the Act and the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"). The respondent has appealed from the denial of his applications for withholding of removal.

We hold that a person's mental health is not a factor to be considered in a particularly serious crime analysis and that adjudicators are constrained by how mental health issues were addressed as part of the criminal proceedings. Accordingly, because we conclude that the respondent has been convicted of a particularly serious crime pursuant to section 241(b)(3)(B) of the Act and 8 C.F.R. § 1208.16(d)(2) (2013), we will dismiss his appeal.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who was admitted to the United States as a lawful permanent resident.  From an early age, he has suffered from chronic paranoid schizophrenia.  The Immigration Judge's finding that the respondent was mentally incompetent for purposes of his removal proceedings is undisputed.  In going forward with the respondent's removal proceedings, various procedural safeguards were implemented, which included representation by legal counsel, the appearance of the respondent's mother on his behalf, and the release of the respondent from custody to his family.

The respondent was convicted in 2004 of assault with a deadly weapon in violation of section 245(a)(1) of the California Penal Code, for which he was sentenced to 2 years in prison.[1]  The Immigration Judge found that the respondent's offense was a crime of violence aggravated felony under section 101(a)(43)(F) of the Act, 8 U.S.C. § 1101(a)(43)(F) (2006).[2]  She further determined that it was a particularly serious crime, which barred the respondent from establishing eligibility for withholding of removal.  However, the Immigration Judge found that the respondent is eligible for deferral of removal under the Convention Against Torture and granted his application for that relief.[3]

---

[1]  At the time of the respondent's conviction in 2004, section 245(a)(1) of the California Penal Code proscribed "an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury."  Section 240 of the California Penal Code, in turn, defined an "assault" as an "unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."  The term "deadly weapon," as used in section 245(a)(1) of the California Penal Code, means "any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury." *People v. Aguilar*, 945 P.2d 1204, 1207 (Cal. 1997) (quoting *In re Jose D.R.*, 186 Cal. Rptr. 898, 901 (Cal. Ct. App. 1982)) (internal quotation marks omitted).

[2]  Although the respondent stated without elaboration on the notice of appeal that his conviction was not for an aggravated felony, he did not pursue that argument in his brief. We will therefore not address this issue further. *See Rizk v. Holder*, 629 F.3d 1083, 1091 n.3 (9th Cir. 2011) (finding that issues not raised in a brief are deemed waived); *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996) (finding that an issue referred to in an appellant's statement of the case but not discussed in the body of the brief is deemed waived); *see also United States v. Grajeda*, 581 F.3d 1186, 1196−97 (9th Cir. 2009) (holding that "assault with a deadly weapon or by means of force likely to produce great bodily injury under section 245(a)(1) is categorically a crime of violence").

[3]  This finding has not been challenged by the Department of Homeland Security and is not before us on appeal.

## II.  ISSUE

The issue before us is whether an alien's mental health at the time he or she committed a crime should be considered in determining if the alien was convicted of a particularly serious crime for immigration purposes.

## III.  ANALYSIS

### A.  Evolution of the Particularly Serious Crime Analysis

The Act does not define the phrase "particularly serious crime."  We first articulated the framework for determining whether a crime was particularly serious under former section 243(h)(2)(B) of the Act, 8 U.S.C. § 1253(h)(2)(B) (1982), in *Matter of Frentescu*, 18 I&N Dec. 244 (BIA 1982).  At that time, we held that in judging the seriousness of a crime, "we look to such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a *danger to the community*," as provided in the statute.  *Id.* at 247 (emphasis added).  We further found that offenses against persons are more likely to be categorized as particularly serious crimes but recognized that there may be instances where crimes against property will be considered particularly serious.  *Id.*

In subsequent decisions, we have held that once an alien is found to have been convicted of a particularly serious crime, there is no need for a separate determination whether he or she is a danger to the community.  *See Matter of N-A-M-*, 24 I&N Dec. 336 (BIA 2007), *aff'd*, *N-A-M- v. Holder*, 587 F.3d 1052 (10th Cir. 2009), *cert. denied*, 131 S. Ct. 898 (2011); *Matter of Q-T-M-T-*, 21 I&N Dec. 639, 646–47 (BIA 1996); *Matter of K-*, 20 I&N Dec. 418, 423–24 (BIA 1991); *Matter of Carballe*, 19 I&N Dec. 357, 360 (BIA 1986).  Our interpretation has been accepted by the courts that have addressed this issue.  *See N-A-M- v. Holder*, 587 F.3d at 1057 (collecting cases); *Ramirez-Ramos v. INS*, 814 F.2d 1394, 1397 (9th Cir. 1987).

Since our decision in *Matter of Frentescu*, the provision that bars aliens with particularly serious crimes from being granted withholding of deportation or removal has been amended three times.  Congress first amended former section 243(h)(2) of the Act in 1990, providing that aggravated felonies are to be categorically considered particularly serious crimes and obviating the need for an individualized analysis of the underlying facts of the aggravated felony conviction.  Immigration Act of 1990, Pub. L. No. 101-649, § 515(a)(2), 104 Stat. 4978, 5053 (effective Nov. 29, 1990);  *Matter of L-S-*, 22 I&N Dec. 645, 650 (BIA 1999).  However, in 1996 Congress gave the Attorney General discretionary

authority to override the categorical bar that designated every aggravated felony as a particularly serious crime. Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 413(f), 110 Stat. 1214, 1269 (effective Apr. 24, 1996) ("AEDPA"). Interpreting the effect of the amended provision in *Matter of Q-T-M-T-*, 21 I&N Dec. at 654, we applied a rebuttable presumption in section 243(h) cases that an aggravated felony was a particularly serious crime.

Months after the passage of the AEDPA, Congress again revised the "particularly serious crime" clause, eliminating the categorical bar to withholding of removal for aliens convicted of an aggravated felony and undermining our rationale for applying a rebuttable presumption in *Matter of Q-T-M-T-*. Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Div. C of Pub. L. No. 104-208, § 305(a), 110 Stat. 3009-546, 3009-597, 3009-602 (effective Apr. 1, 1997) (amending former section 243(h)(2) and recodifying it as section 241(b)(3)(B) of the Act, 8 U.S.C. § 1231(b)(3)(B) (Supp. II 1996)); *Matter of L-S-*, 22 I&N Dec. at 650–51; *Matter of S-S-*, 22 I&N Dec. 458, 463 (BIA 1999), *overruled in part by Matter of Y-L-, A-G- & R-S-R-*, 23 I&N Dec. 270, 273–74 (A.G. 2002). This last revised version of the particularly serious crime clause remains in effect and applies to the respondent's case.

## B. Current Law

The Act currently provides that an alien is ineligible for withholding of removal if "the Attorney General decides that . . . the alien, having been convicted by a final judgment of a particularly serious crime, is a danger to the community of the United States." Section 241(b)(3)(B)(ii) of the Act; *see also* 8 C.F.R. § 1208.16(d)(2) (providing that an "alien who has been convicted of a particularly serious crime shall be considered to constitute a danger to the community"). Section 241(b)(3)(B) further states that "[f]or purposes of [section 241(b)(3)(B)(ii)], an alien who has been convicted of an aggravated felony . . . for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime." However, the Attorney General is not precluded from determining that the alien has been convicted of a particularly serious crime, regardless of the sentence imposed. *Id.* Moreover, an offense need not be an aggravated felony to be a particularly serious crime. *See Delgado v. Holder*, 648 F.3d 1095, 1097 (9th Cir. 2011) (en banc) (deferring to *Matter of N-A-M-*, 24 I&N Dec. at 337).

We have held that for an alien who has not been convicted of an aggravated felony or whose aggravated felony conviction did not result in an aggregate term of imprisonment of 5 years or more, it is necessary to

examine the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction to determine whether the crime was particularly serious. *Matter of N-A-M-*, 24 I&N Dec. at 342. As the Ninth Circuit has noted, we have identified "'dangerousness,' [as] the pivotal standard by which particularly serious crimes are judged." *Alphonsus v. Holder*, 705 F.3d 1031, 1041 (9th Cir. 2013) (citing *Matter of N-A-M-*, 24 I&N Dec. at 341–43).

If the elements of an offense are found to potentially bring it within the ambit of a particularly serious crime, all reliable information that is relevant to the determination may be considered. *Matter of N-A-M-*, 24 I&N Dec. at 342. This may include the conviction records and sentencing information, as well as other information outside the confines of a record of conviction. *Id.*; *see also Anaya-Ortiz v. Holder*, 594 F.3d 673, 678–79 (9th Cir. 2010) (deferring to our interpretation of the evidence that may be considered in a particularly serious crime determination).

A particularly serious crime analysis is centered on the crime that was committed. *Matter of Carballe*, 19 I&N Dec. at 360. Consequently, the inquiry does not involve an examination of an alien's personal circumstances and equities, such as family or community ties or any risk of persecution in the country of removal. *Matter of L-S-*, 22 I&N Dec. at 651; *Matter of Q-T-M-T-*, 21 I&N Dec. at 656; *Matter of K-*, 20 I&N Dec. at 418 (stating that a particularly serious crime analysis "relates only to the nature of the crime and does not vary with the nature of the evidence of persecution"); *Matter of Rodriguez-Coto*, 19 I&N Dec. 208, 209–10 (BIA 1985).

The presence or absence of harm to the victim is also a pertinent factor in evaluating whether a crime was particularly serious. *See, e.g.*, *Alphonsus v. Holder*, 705 F.3d at 1043 (recognizing "that harm to persons is the usual requisite danger" relevant in a particularly serious crime analysis); *Matter of R-A-M-*, 25 I&N Dec. 657, 661 (BIA 2012) (finding that possession of child pornography was a particularly serious crime and noting "that the primary victims of the distribution of child pornography are the people who are depicted in the pornographic materials" (citing *United States v. Stevens*, 197 F.3d 1263, 1269 n.6 (9th Cir. 1999))); *Matter of N-A-M-*, 24 I&N Dec. at 343 (finding that felony menacing was a particularly serious crime because it is an offense against a person, and the statute of conviction clearly required a serious threat to others); *cf. Matter of L-S-*, 22 I&N Dec. at 655–56 (finding that an alien smuggling conviction, which resulted in a 3½-month sentence, was not for a particularly serious crime and noting that the statute did not require proof of any endangerment, harm, or intended harm and the smuggled alien suffered no actual harm).

The language of the statute provides the "essential key" to determining whether a crime is particularly serious, which is "whether the nature of the crime is one which indicates that the alien poses a danger to the community." *Matter of Carballe*, 19 I&N Dec. at 360. Once an offense is determined to be particularly serious, no separate determination of danger to the community is required. 8 C.F.R. § 1208.16(d)(2); *see also Anaya-Ortiz v. Holder*, 594 F.3d at 679.

## C. Application to the Respondent

The respondent was convicted of assault with a deadly weapon. Because he was not sentenced to a term of imprisonment of more than 5 years, the respondent is not barred from establishing eligibility for relief under section 241(b)(3)(B) of the Act. We therefore evaluate the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of his assault with a deadly weapon conviction to determine whether his crime was particularly serious. *See Anaya-Ortiz v. Holder*, 594 F.3d at 679; *Matter of R-A-M-*, 25 I&N Dec. at 659; *Matter of N-A-M-*, 24 I&N Dec. at 342; *Matter of Frentescu*, 18 I&N Dec. at 247.

As previously noted, we have long recognized that "crimes against persons" are more likely to be categorized as particularly serious crimes. *See, e.g.*, *Matter of R-A-M-*, 25 I&N Dec. at 662; *Matter of N-A-M-*, 24 I&N Dec. at 343; *Matter of L-S-*, 22 I&N Dec. at 649; *Matter of Frentescu*, 18 I&N Dec. at 247; *see also Matter of L-S-J-*, 21 I&N Dec. 973, 974−75 (BIA 1997) (finding robbery with a deadly weapon, a handgun, to be a particularly serious crime).

In considering the circumstances of the respondent's offense, the Immigration Judge relied on sworn testimony given by the respondent's victim during the preliminary criminal hearing. According to the victim, the respondent physically assaulted him by swinging a weightlifting bell and grazing the side of his head, which resulted in a laceration that required stitches. This was a dangerous act capable of causing grave injuries. The gravity of the respondent's offense is also reflected in his 2-year sentence to prison.

We recognize the significance of the respondent's mental health struggles and sympathize with the resulting hardships he has faced. However, based on our assessment of the nature of the respondent's conviction, the prison sentence imposed, and the circumstances of his offense, we concur with the Immigration Judge that the respondent's conviction for assault with a deadly weapon was for a particularly serious crime.

The respondent argues on appeal that his mental condition should be a factor in determining whether his offense was a particularly serious crime for purposes of section 241(b)(3)(B) of the Act. He claims that "his mental illness prevented him from solving a complex social situation such as being aggressively challenged by a stranger" and consequently resulted in his use of violence. We are unpersuaded by this contention and conclude that consideration of an alien's mental health as a factor in the criminal act falls within the province of the criminal courts and is not a factor to be considered in a particularly serious crime analysis.

Whether and to what extent an individual's mental illness or disorder is relevant to his or her commission of an offense and conviction for the crime are issues best resolved in criminal proceedings by the finders of fact. Such fact finders have expertise in the applicable State and Federal criminal law, are informed by the evidence presented by the defendant and the prosecution, and have the benefit of weighing all the factors firsthand. We cannot go behind the decisions of the criminal judge and reassess any ruling on criminal culpability.

Issues concerning a defendant's mental condition at the time a crime was committed can be raised at different phases of the criminal proceedings. For instance, evidence of a defendant's mental condition may give rise to a reason to doubt his or her competency to stand trial.[4] Further, such evidence may be submitted to establish an affirmative defense of not guilty by reason of insanity, to show the absence of specific intent or other mental states required for a conviction, or to be a mitigating factor for sentencing purposes.[5] The defendant's mental condition may also be raised in post-conviction motions, appeals, and petitions.

---

[4] As the Supreme Court has noted, it "has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Indiana v. Edwards*, 554 U.S. 164, 169–70 (2008) (emphasis omitted) (quoting *Drope v. Missouri*, 420 U.S. 162, 171 (1975)); *see also Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam) (defining the competency standard as including whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him" (quoting the Solicitor General) (internal quotation mark omitted)).

[5] *See Clark v. Arizona*, 548 U.S. 735, 749–52 (2006) (noting that most States recognize some variant of the insanity defense); *United States v. Christian*, 749 F.3d 806, 813 (9th Cir. 2014) (finding that the trial court erroneously excluded expert testimony that could have "provided some evidentiary basis for inferring" a link between the defendant's mental illness and his defense that he lacked the specific intent required by the charged offense); *Caro v. Woodford*, 280 F.3d 1247, 1254–56 (9th Cir. 2002) (finding ineffective assistance where counsel failed to investigate and present evidence of the

(continued . . .)

It is fundamental to California's jurisprudence that an individual with a mental condition that renders that person legally "insane" cannot be convicted of acts performed while suffering from that condition. *See People v. Kelly,* 516 P.2d 875, 881−83 (Cal. 1973) (finding that the defendant was not guilty of assault with a deadly weapon by reason of insanity where evidence showed that she was psychotic at the time of the offense and was incapable of understanding that her act was wrong). However, the respondent has not made a claim that he entered a plea of guilty by reason of insanity at his criminal proceedings, nor has he presented any evidence of such a plea. *See People v. Mills*, 286 P.3d 754, 758–61 (Cal. 2012) (explaining California law on the insanity defense and proof of the defendant's mental state). Insanity at the time the offense was committed was a factual question to be decided by the trier of fact during his criminal proceedings. *See People v. Kelly*, 516 P.2d at 881. No such finding of fact was made in the respondent's criminal case.

The record reflects that the respondent's mental disorder warranted the application of procedural safeguards in removal proceedings to ensure the protection of his right to a fair hearing. *See Matter of M-A-M-*, 25 I&N Dec. 474, 479–81, 483 (BIA 2011). However, his mental condition does not relate to the pivotal issue in a particularly serious crime analysis, which is whether the nature of his conviction, the sentence imposed, and the circumstances and underlying facts indicate that he posed a danger to the community. Section 241(b)(3)(B)(ii) of the Act; *Alphonsus v. Holder*, 705 F.3d at 1041 (citing *Matter of N-A-M-*, 24 I&N Dec. at 341–43; *Matter of Carballe*, 19 I&N Dec. at 360); *Delgado v. Holder*, 648 F.3d at 1107. The respondent's claim that his violent act was a result of his mental illness does not lessen the danger that his actions posed to others and is therefore not relevant to our determination that his offense is a particularly serious crime.

The respondent also asserts that section 245(a)(1) of the California Penal Code "does not necessarily require evil intent or fraud" and contends that as a result of his mental disorder, he "did not act with the requisite intent to render his crime particularly serious." Whether an offense requires evil intent or fraud is often a relevant factor in determining whether a crime involves moral turpitude. *See Matter of Solon*, 24 I&N Dec. 239, 240–41 (BIA 2007); *Matter of Torres-Varela*, 23 I&N Dec. 78,

---

defendant's brain damage as a mitigating factor during the penalty phase); *People v. DeHoyos*, 303 P.3d 1, 33 (Cal. 2013) (noting that the California Penal Code "permit[s] introduction of evidence of mental illness when relevant to whether a defendant actually formed a mental state that is an element of a charged offense").

82–84 (BIA 2001). It may also be appropriate to consider whether an alien's conduct was "inherently base, vile, or depraved" in deciding whether a crime is particularly serious. *Matter of Ajami*, 22 I&N Dec. 949, 950 (BIA 1999) (defining moral turpitude). However, since the focus in a particularly serious crime analysis is whether the offense justifies a determination that the respondent "is a danger to the community," an inquiry regarding evil intent or fraud is not necessarily dispositive. Section 241(b)(3)(B)(ii) of the Act; *see also Alphonsus v. Holder*, 705 F.3d at 1041; *Matter of N-A-M-*, 24 I&N Dec. at 341–43; 8 C.F.R. § 1208.16(d)(2).

Assault with a deadly weapon under section 245(a)(1) of the California Penal Code is a general intent crime, which does not require any specific intent to injure another. California courts have nevertheless recognized that the statute's general intent requirement does not diminish the dangerousness of acts committed in violation of this statute. *See, e.g.*, *People v. Aznavoleh*, 148 Cal. Rptr. 3d 901, 908–09 (Cal. Ct. App. 2012) (observing that running a red light while racing another vehicle on a busy city street was inherently dangerous to others); *In re Gavin T.*, 77 Cal. Rptr. 2d 701, 703 (Cal. Ct. App. 1998) (stating that to be found guilty of criminal assault, "one must have a general criminal intent to do an act which is inherently dangerous to human life"). Because the respondent's assault with a deadly weapon is an inherently dangerous offense, his commission of the crime warrants a finding that he is "a danger to the community," even if he did not intend to commit a particularly serious crime. Section 241(b)(3)(B)(ii) of the Act.

## IV. CONCLUSION

Although we are mindful of the impact mental illness can have on an individual's behavior, we conclude that an alien's mental health is not a factor to be considered in assessing whether he or she has been convicted of a particularly serious crime under section 241(b)(3)(B) of the Act.[6] Upon our de novo review, we conclude that the respondent did not satisfy his burden of establishing that his conviction for assault with a deadly weapon was not for a particularly serious crime. *See* 8 C.F.R. § 1240.8(d) (2013)

---

[6] An alien who, "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States" is similarly barred from establishing eligibility for asylum under section 208(b)(2)(A)(ii) of the Act, 8 U.S.C. § 1158(b)(2)(A)(ii) (2012). Our analysis in this case would also apply to aliens who may be eligible for asylum. The respondent is not eligible for asylum because he has been convicted of an aggravated felony. *See* section 208(b)(2)(B)(i) of the Act; 8 C.F.R. § 1208.13(c)(1) (2013).

(providing that an applicant for relief from removal has the burden of proving by a preponderance of the evidence that a ground for mandatory denial of an application does not apply).  Because the respondent has been convicted of a particularly serious crime, he is ineligible for withholding of removal under both the Act and the Convention Against Torture.  However, he remains eligible for deferral of removal under the Convention Against Torture, and the Immigration Judge's grant of that relief has not been contested on appeal.  Accordingly, the respondent's appeal will be dismissed and the record will be remanded solely for the purpose of completing the requisite background checks.

**ORDER:**  The respondent's appeal is dismissed.

**FURTHER ORDER:**  Pursuant to 8 C.F.R. § 1003.1(d)(6) (2013), the record is remanded to the Immigration Judge for the purpose of giving the Department of Homeland Security the opportunity to complete or update identity, law enforcement, or security investigations or examinations, for further proceedings, if necessary, and for the entry of an order as provided by 8 C.F.R. § 1003.47(h) (2013).