# Matter of B-Z-R-, Respondent

*Decided by Attorney General May 9, 2022*

U.S. Department of Justice
Office of the Attorney General

(1)  *Matter of G-G-S-*, 26 I&N Dec. 339 (BIA 2014), is overruled.

(2)  Immigration adjudicators may consider a respondent's mental health in determining whether an individual, "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States."  8 U.S.C. § 1158(b)(2)(A)(ii); *see id* § 1231(b)(3)(B)(ii).

## BEFORE THE ATTORNEY GENERAL

Under the Immigration and Nationality Act ("INA"), asylum and withholding of removal are unavailable to a non-citizen who, "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States."  INA § 208(b)(2)(A)(ii), 8 U.S.C. § 1158(b)(2)(A)(ii); *see id.* § 241(b)(3)(B)(ii), 8 U.S.C. § 1231(b)(3)(B)(ii).  The INA specifies that aggravated felony convictions are per se particularly serious crimes for purposes of asylum, *id.* § 208(b)(2)(B)(i), 8 U.S.C. § 1158(b)(2)(B)(i), and that aggravated felonies are per se particularly serious crimes for purposes of withholding of removal if the respondent was sentenced to an aggregate term of imprisonment of at least five years, *id.* § 241(b)(3)(B), 8 U.S.C. § 1231(b)(3)(B).  For all other offenses, the INA does not specify when a crime qualifies as particularly serious.  The Board has filled that statutory gap by holding that, where the statute's per se rules do not apply, adjudicators must determine on a case-by-case basis whether a conviction is for a particularly serious crime. *Matter of N-A-M-*, 24 I&N Dec. 336, 338 (BIA 2007); *see, e.g.*, *Denis v. Att'y Gen. of U.S.*, 633 F.3d 201, 214–17 (3d Cir. 2011) (deferring to this interpretation); *Delgado v. Holder*, 648 F.3d 1095, 1097–98 (9th Cir. 2011) (en banc) (same); *Gao v. Holder*, 595 F.3d 549, 554 (4th Cir. 2010) (same); *N-A-M- v. Holder*, 587 F.3d 1052, 1056 (10th Cir. 2009) (per curiam) (same).

The Board has held that "the essential key" in determining whether an offense is particularly serious is whether it "indicates that the [respondent] poses a danger to the community."  *Matter of Carballe*, 19 I&N Dec. 357, 360 (BIA 1986); *see Gomez-Sanchez v. Sessions*, 892 F.3d 985, 991 (9th Cir. 2018) (explaining that "dangerousness" is "the 'essential key' to determining whether the individual's conviction was for a particularly serious crime"

(quoting *Alphonsus v. Holder*, 705 F.3d 1031, 1041 (9th Cir. 2013)).[1]  Thus, "in judging the seriousness of a crime, [adjudicators] look to such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the respondent is a danger to the community." *Matter of L-S-*, 22 I&N Dec. 645, 649 (BIA 1999); *see Carballe*, 19 I&N Dec. at 360; *Matter of Frentescu*, 18 I&N Dec. 244, 247 (BIA 1982).  The Board has emphasized that "all reliable information may be considered in making a particularly serious crime determination," including "information outside the confines of a record of conviction." *N-A-M-*, 24 I&N Dec. at 342.

In *Matter of G-G-S-*, however, the Board determined "that a person's mental health is not a factor to be considered in a particularly serious crime analysis." 26 I&N Dec. 339, 339 (BIA 2014).  This determination rested on two rationales.  First, the Board reasoned that "[w]hether and to what extent an individual's mental illness or disorder is relevant to his or her commission of an offense and conviction for the crime are issues best resolved in criminal proceedings by the finders of fact," and immigration adjudicators "cannot go behind the decisions of the criminal judge and reassess any ruling on criminal culpability." *Id.* at 345.  Second, the Board concluded that a non-citizen's "mental condition does not relate to the pivotal issue in a particularly serious crime analysis, which is whether the nature of his conviction, the sentence imposed, and the circumstances and underlying facts indicate that he posed a danger to the community." *Id.* at 346.

Three Courts of Appeals have reviewed the Board's decision in *G-G-S-*.  The Eighth and Ninth Circuits have rejected the Board's treatment of mental health in *G-G-S-* as inadequately reasoned and inconsistent with Board precedent.  *Shazi v. Wilkinson*, 988 F.3d 441, 448–50 (8th Cir. 2021); *Gomez-Sanchez*, 892 F.3d at 992–97.  The Tenth Circuit has held that, while *G-G-S-* "may not provide the most obvious framework for determining whether an offense is a 'particularly serious crime,'" and although "criticisms of that decision . . . are well taken," the Board's decision is nonetheless entitled to deference.  *Birhanu v. Wilkinson*, 990 F.3d 1242, 1263–64 (10th Cir. 2021), *cert. petition pending*, No. 21-539; *see also id.* at 1266–72 (Bacharach, J., concurring in part and dissenting in part) (arguing that *G-G-S-* is "arbitrary" and should be overturned).  Accordingly, in the Eighth

---

[1]  Respondent and certain amici have asked me to revisit the Board's holding in *Carballe* that the particularly serious crime analysis focuses only on the nature and circumstances of the crime at issue, and not on an additional assessment of whether the respondent is likely to engage in future serious misconduct.  But I did not request briefing on that issue, *see Matter of B-Z-R-*, 28 I&N Dec. 424 (A.G. 2021), and I accordingly decline to address the Board's existing body of law on that subject.

and Ninth Circuits, adjudicators may consider mental health evidence when making a particularly serious crime determination, but in the rest of the country immigration adjudicators are constrained by *G-G-S-* to disregard such evidence.

Respondent is a native and citizen of Mexico who was convicted in April 2017 of burglary in violation of N.J. Stat. Ann. § 2C:18-2(a)(1) (West) and sentenced to four years of imprisonment. Following the initiation of removal proceedings, respondent sought withholding of removal on the ground that, if returned to Mexico, he would be persecuted on the basis of his sexual orientation and mental health condition. The immigration judge denied respondent's application because the judge determined that respondent's conviction was for a particularly serious crime. Relying on *G-G-S-*, the immigration judge did not consider respondent's mental health in making the particularly serious crime determination. The Board upheld the immigration judge's decision and dismissed respondent's appeal. *Matter of B-Z-R-*, slip op. at *4–5 (BIA Dec. 3, 2020). The Board acknowledged that "[t]he record includes evidence that the respondent has been diagnosed with a serious mental disorder," *id.* at *1, but concluded that *G-G-S-* foreclosed consideration of respondent's mental health in determining whether he was convicted of a particularly serious crime, *id.* at *4. The Board, however, remanded the case for further consideration of respondent's application for deferral of removal under the Convention Against Torture based on additional evidence showing respondent's worsening mental health symptoms. *Id.* at *4–5.[2]

On December 9, 2021, I directed the Board to refer this case for my review, *see* 8 C.F.R. § 1003.1(h)(1)(i), and invited the parties and any interested amici to submit briefs addressing whether mental health may be considered when determining whether an individual was convicted of a "particularly serious crime" within the meaning of 8 U.S.C. §§ 1158(b)(2)(A)(ii) and 1231(b)(3)(B)(ii). *Matter of B-Z-R-*, 28 I&N Dec. 424 (A.G. 2021). Both respondent and the Department of Homeland Security now agree that *G-G-S-* is erroneous and should be overruled. Respondent's Opening Br. at 5–11 (Jan. 31, 2022); U.S. Dep't of Homeland Security's Opening Br. at 6–13 (Jan. 31, 2022).

I have determined that it is appropriate to overrule the Board's decision in *G-G-S-*. As noted, the Board has held that "the essential key" in determining whether an offense is particularly serious is whether it "indicates that the [respondent] poses a danger to the community." *Carballe*, 19 I&N Dec. at 360. In some circumstances, a respondent's mental health condition

---

[2] While *withholding of removal* under the Convention Against Torture ("CAT") is unavailable for non-citizens convicted of a particularly serious crime, *deferral of removal* under CAT is available. 8 C.F.R. §§ 1208.16(d)(2), 1208.17(a).

may indicate that the respondent does not pose a danger to the community—for instance, where the respondent "suffered from intimate partner violence, was convicted of assaulting his or her abuser, and reliable evidence showed that the individual's diagnosed post-traumatic stress disorder had played a substantial motivating role in the assault." *Gomez-Sanchez*, 892 F.3d at 996 n.10. Of course, an individual may pose a danger to the community notwithstanding a mental health condition, and in those cases, the "particularly serious crime" bar to asylum and withholding of removal may apply. But the potential relevance of mental health evidence to the dangerousness inquiry suffices to establish that such evidence should not categorically be disregarded, as *G-G-S-* held.

Neither of the rationales the Board offered in *G-G-S-* justifies its exclusion of mental health evidence. First, *G-G-S-* reasoned that immigration adjudicators "cannot go behind the decisions of the criminal judge and reassess any ruling on criminal culpability." 26 I&N Dec. at 345. But the inquiry into whether a conviction is "particularly serious" does not involve any reassessment of criminal culpability. It concerns a distinct question: whether a respondent, "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." 8 U.S.C. § 1158(b)(2)(A)(ii); *see id.* § 1231(b)(3)(B)(ii); *Shazi*, 988 F.3d at 450; *Gomez-Sanchez*, 892 F.3d at 993–94. Moreover, for a variety of reasons, the mental health evidence that a non-citizen may seek to offer in the immigration context might never have been raised in the underlying criminal proceeding. *See N-A-M-*, 24 I&N Dec. at 342 (explaining that immigration judges may consult "information outside the confines of a record of conviction"). Although a non-citizen's mental health may arise in the context of mens rea elements, insanity defenses, or competency determinations, the applicability of such evidence in criminal proceedings varies considerably depending on the charge and jurisdiction. A specific mental state may not be required for certain convictions, such as strict liability crimes. For other criminal convictions, mental health may not be a defense. Similarly, mental health evidence might bear on the seriousness of a crime or dangerousness of an individual for immigration purposes but not on, for example, competency to stand trial.

Second, *G-G-S-* reasoned that a respondent's "mental condition does not relate to the pivotal issue in a particularly serious crime analysis, which is whether the nature of his conviction, the sentence imposed, and the circumstances and underlying facts indicate that he posed a danger to the community." 26 I&N Dec. at 346. But, as explained above, a respondent's mental health condition may bear directly on whether the respondent poses a danger to the community. Indeed, the Board's decision in *G-G-S-* recognized the Board's prior holdings that a respondent's motivation and intent can be

relevant to the inquiry into dangerousness. *See id.* at 347 (recognizing that it may "be appropriate to consider whether . . . conduct was 'inherently base, vile, or depraved' in deciding whether a crime is particularly serious" (quoting *Matter of Ajami*, 22 I&N Dec. 949, 950 (BIA 1999)). The Board provided no sound reason why mental health evidence should be treated differently from other evidence pertinent to a respondent's mental state. Although *G-G-S-* went on to observe that considerations regarding a respondent's mental state are "not necessarily dispositive," *id.*, the standard for determining whether evidence should be considered is whether that evidence is probative, not whether it is dispositive. *See Matter of Y-S-L-C-*, 26 I&N Dec. 688, 690 (BIA 2015). The relevance of mental health evidence in any given case is best determined through the Board's longstanding case-by-case approach.

Accordingly, *G-G-S-* is overruled. Going forward, immigration adjudicators may consider a respondent's mental health in determining whether a respondent, "having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." 8 U.S.C. § 1158(b)(2)(A)(ii); *see id.* § 1231(b)(3)(B)(ii). The Board's decision in respondent's matter is vacated and the case is remanded to the immigration judge for further proceedings consistent with this opinion.